IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL ARMIJO,

    Plaintiff,

v.                                            CV 08-0935 MV/WPL

VILLAGE OF COLUMBUS ET AL.,

    Defendants.

**ORDER**

After being fired from his position as Chief of Police for the Village of Columbus, Paul Armijo sued the Village and several other entities and individuals. One matter in dispute between the parties is whether Armijo stole two guns from the Village. The Village has filed a motion to compel discovery from Armijo, seeking a privilege log and supplemental responses to interrogatories 1, 3, 5, 19, 25-27, and 32 and requests for production 9-10.[1]

The scope of discovery is limited to relevant information. *See* FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* A "request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party" and a "request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Hammond v. Lowe's Home Ctrs.*, 216 F.R.D. 666, 670 (D. Kan. 2003) (internal quotation marks and citations omitted). If a discovery request meets this minimal standard, the party resisting discovery has the

---

[1] The Village originally sought to compel Armijo to supplement his answer to interrogatory 31 but later withdrew this request. (*See* Doc. 73 at 7.)

burden to establish the lack of relevance. *Id.* "[W]hen relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Id.*

Having considered the motion to compel, response, reply, and related exhibits in light of these standards, I will grant the motion in part, as explained below. Armijo's supplemental answers to the discovery requests must be served on the Village within ten days of the date this order is filed.

Interrogatory 1: This interrogatory asks Armijo to provide the dates of his marriages and the identities and current contact information for his present and former wives. Armijo's answer states that he has been "Married to for [sic] 14.5 years – Divorced in 2001," gives his current wife's address, and indicates that he has been married to his current wife since 2004.

In its motion to compel, the Village contends that Armijo did not make clear whether he had been married previously and if so, did not provide the requested information for his former wives. The Village argues that Armijo's marital history is relevant because Armijo's reputation and criminal history are at issue, and the Village may need to speak with his former spouses about these topics. In response, Armijo asserts that his marital history is irrelevant, that it is speculative to think that his prior wives would have relevant information, and that his answer clearly indicates that he was divorced in 2001 and remarried in 2004. In reply, the Village claims that Armijo pled no contest to fraud against his first wife and asserts that this crime might be used to impeach his credibility. The Village also claims, on information and belief, that Armijo stole a gun from the Socorro County Sheriff's Department (SCSD). The Village argues that it is "conceivable" that Armijo's first wife may have information regarding this occurrence, which may be relevant to the Village's after-acquired evidence defense. (Doc. 73 at 3.)[2]

---

[2] The Tenth Circuit recently explained how the after-acquired evidence defense operates. If, after an employee was fired for illegal reasons, the employer learns of misconduct that would have justified

If Armijo was convicted of defrauding his first wife, that crime might be admissible for impeachment purposes. Therefore, the former wife's name and contact information might lead to admissible evidence. *See* FED. R. EVID. 609(a) (explaining when a witness may be impeached with evidence of conviction); *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (noting that the scope of discovery encompasses impeachment evidence). Armijo must supplement his answer to interrogatory 1 by providing the name and contact information of his first wife, unless he demonstrates that he was not convicted of defrauding her.

Interrogatory 3: This interrogatory asks Armijo to state his annual income from 1997 to the present and to identify all sources of income for the same period. Armijo objected to providing this information for more than eight years. He provided his income tax returns for the years 2005 to 2008 and indicated that previous tax returns remain in the possession of law enforcement agencies that seized them from his residence.

In its motion to compel, the Village requests that Armijo be ordered to estimate his income and identify the sources of his income for the years 1999 to 2004. The motion states that the Village believed it had reached an agreement with Armijo to provide the information requested in Interrogatory 3 for a ten-year period (*i.e.*, from 1999 to the present), but that Armijo had not supplemented his interrogatory in compliance with the purported agreement.

The Village has submitted a copy of a letter dated May 21, 2009 from its attorney to Armijo's attorney. The letter states that it confirms agreements made between the two attorneys and advises, "Unless I hear differently from you, I will assume I have accurately set forth our discussion . . . ." (Doc. 67 Ex. C.) The letter states that Armijo's attorney agreed that Armijo "would

---

terminating the employee, the employer is still liable for the illegal firing, but the employee's remedies are limited. *See Perkins v. Silver Mountain Sports Club & Spa*, 557 F.3d 1141, 1145 (10th Cir. 2009).

supplement his Interrogatory answers to reflect additional information regarding his annual income, employment history, medical history, gun ownership/purchase history and claims for unemployment compensation for the last ten years." (*Id.*) It also states that Armijo's attorney agreed to have him provide the Village "with executed releases which would allow this Defendant to obtain certain tax and medical information regarding Plaintiff for a ten year period." (*Id.*) The Village states that Armijo's attorney never responded to the May 21 letter. The motion to compel was filed on June 11.

Armijo's response to the motion states at the outset that the letter "mischaracterizes the substance of counsels' conversations." (Doc. 68 at 2.) The response concedes that Armijo's attorney agreed "that Armijo would provide executed releases . . . related to medical/psychological records and tax information, and that any information related to income and medical history would be restricted to a 10-year period," but asserts that "[n]o other agreements were made regarding any matter." (*Id.*) The response provides no explanation for counsel's failure to reply to the letter.

Regarding interrogatory 3, Armijo blames the Village's attorney for failing to provide him with a tax records release limited to the agreed-upon years. He states that he is willing to sign a properly limited release. In reply, the Village agrees to provide Armijo with a tax records release for the years 1999 to 2004 and no longer requests that Armijo be compelled to estimate his income for those years. However, the Village continues to request that Armijo be compelled to identify the sources of his income because the tax returns do not necessarily contain this information.

In accordance with the parties' agreement, Armijo must sign a tax records release authorizing disclosure of his 1999 to 2004 tax returns. Armijo has made no argument in this Court as to why he should not be compelled to provide his sources of income. *See Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) ("When ruling upon a motion to compel, the

Court will consider only those objections that have been (1) timely asserted, *and* (2) relied up[on] in response to the motion to compel."). Therefore, he must supplement his answer to interrogatory 3 by stating the sources of his income from 1999 to the present.

Interrogatory 5: This interrogatory asks Armijo to provide the name and address of each employer for whom he worked in the last twenty years. It also asks him to include the dates of employment, titles held, supervisors' names, and discipline and grievance history. Armijo objected to providing any information in response to this request for more than eight years. He provided the requested information going back to 2001.

Relying again on the May 21 letter, the Village claims in its motion to compel that it thought Armijo's attorney agreed to provide the requested information going back to 1999. The Village states that Armijo provided an employment records release with no time limits, but argues that it does not know where to send the release without Armijo's employment history. Despite the parties' agreement to a ten-year period, the Village seeks to compel an answer for the twenty-year period originally contemplated by the interrogatory. The Village argues that because Armijo is approximately 42-years-old, his employment history likely dates back twenty-five years. The Village asserts that information regarding his employment may lend itself to an after-acquired evidence defense or shed light on Armijo's trustworthiness.

In response, Armijo contends that interrogatory 5 is the prototypical fishing expedition and that the Village has come forward with no evidence that employment records predating 2001 contain any information reasonably calculated to lead to the discovery of admissible evidence. Armijo is trying to reverse the burdens that apply to a motion to compel discovery. As the party opposing discovery, it is his burden to demonstrate that the requested information could not lead to the discovery of admissible evidence. *See Hammond*, 216 F.R.D. at 670.

Armijo also complains that the Village has already gone beyond his eight-year limitation. Attached as an exhibit to the response is Armijo's employment record from his job with the SCSD. (Doc. 68 Ex. 3.) The record was sent to Armijo's attorney by the Village's attorney. It shows that Armijo applied for the job in 1998 and resigned on August 21, 2000. Armijo suggests that it was inappropriate for the Village to obtain this record, since he only disclosed his employers from 2001 forward. It is not clear how obtaining this record was inappropriate, especially considering that Armijo provided the Village with an unlimited release and the Village apparently believed the parties had agreed on a ten-year period.

Finally, Armijo criticizes the Village for seeking to compel disclosure of his employment history going back twenty years. He states, "[A]lthough *Defendant* agreed to a 10-year limitation, . . . it is clear that Defendants [sic] intends to abide by no agreements *between the parties*." (Doc. 68 at 6 (emphasis added).) I am unsure how to interpret this statement. Earlier in the response, Armijo states that his attorney agreed only "that any information related to income . . . would be restricted to a 10-year period." (*Id.* at 2.) This statement indicates that Armijo's attorney did not agree to provide his employment history for a ten-year period. It is undisputed that Armijo did not provide the ten-year employment history and he continues to argue in his response that eight years is sufficient. It thus appears that Armijo is trying to hold the Village to an unaccepted offer to limit the period to ten years. Yet if–as Armijo seems to contend–Armijo's attorney never accepted the Village's offer, there was no agreement, and the Village is within its rights in seeking a response to the interrogatory as written. Moreover, Armijo has not refuted the Village's argument that his employment history may yield relevant evidence regarding its after-acquired evidence defense.

Armijo must supplement his response to interrogatory 5 to provide the requested information for a twenty-year period.

6

Interrogatory 19: This interrogatory asks for information regarding medical treatment, including mental health treatment, for the twenty-year period preceding the date of the incidents at issue in this case. Armijo objected to the twenty-year period and stated that he would provide the requested information for the last eight years. His answer includes a reference to a psychological examination conducted by the New Mexico Department of Public Safety in April 1995.

Relying on the May 21 letter, the Village states in the motion to compel that it thought Armijo had agreed to provide a medical history for ten years. Armijo acknowledges this agreement in his response to the motion. It is also undisputed that Armijo has signed a release allowing the Village to obtain his medical records for the ten-year period. (*See* Doc. 68 Ex. 4.) The Village's complaint is that Armijo never provided the names of other medical providers who treated him during the ten-year period or advised the Village that his original answer was complete. The motion to compel requests that Armijo be ordered to provide a complete medical history since January 1, 1999.

In his response to the motion to compel, Armijo asserts that pursuant to D.N.M.LR-Civ. 26.3(d), he is only required to provide medical records for five years preceding the incident at issue. Since the incidents at issue here occurred in December 2006 and January 2007, he is only required to provide records for the eight years dating back to 2001. By providing a release covering ten years, he has gone beyond the requirements of the rule. Armijo also states:

> There is no reason for Defendant to believe that Armijo's original Answer to Interrogatory 19 is incomplete. Interrogatory No. 19 is specifically restricted to Armijo's mental health history. The Answer stands as provided and is need of no further supplementation [sic]. Indeed, the Answer provides information from 1995, far beyond any 10-year limitation.

(Doc. 68 at 6.)

7

In light of Armijo's response, the Village requests in its reply that Armijo provide a supplemental answer to interrogatory 19, stating that he has provided his complete medical history since January 1, 1999.

Armijo's response regarding this interrogatory, like his response as to interrogatory 5, is confusing. It is unclear why he cites the local rule regarding initial disclosures when initial disclosures are not at issue. It is also unclear why he asserts that there is no reason for Defendant to believe that the original answer is incomplete, rather than simply declaring that the answer is complete. Moreover, as I read interrogatory 19, it is not limited to mental health history. Accordingly, Armijo must supplement his answer to the interrogatory to state whether he has provided his complete medical history since January 1, 1999.

Interrogatories 25 and 26: These interrogatories seek information regarding every weapon Armijo has owned, possessed, or purchased over the past fifteen years. Armijo objected to the fifteen-year period and provided some of the information for an eight-year period. The May 21 letter states that Armijo's attorney agreed that he would provide additional information regarding his "gun ownership/purchase history" for a ten-year period, but Armijo now denies such an agreement.

The Village requests that Armijo be compelled to provide the information requested in interrogatories 25 and 26 since January 1, 1999. The Village contends that this time period is critical because it covers Armijo's employment with the SCSD. The Village reiterates (in its reply) the allegation that Armijo stole a shotgun from the SCSD. It argues that his gun ownership and purchase history may reveal his possession of that shotgun, which would support the Village's after-acquired evidence defense. Furthermore, because Armijo's alleged theft of two guns from the Village is at issue in this suit, evidence of prior weapons thefts may be relevant to knowledge or

8

intent. Armijo argues that the interrogatories are simply not calculated to lead to the discovery of admissible evidence.

Without expressing any opinion as to whether the information will ultimately be deemed admissible, *see* FED. R. EVID. 404(b) and 608(b), I conclude that the interrogatories are reasonably calculated to lead to the discovery of admissible evidence. Therefore, Armijo must supplement his answers to interrogatories 25 and 26 to provide the requested information since January 1, 1999.

<u>Interrogatory 27 and Request for Production 10</u>: Interrogatory 27 asks Armijo to disclose each lawsuit to which he has been a party, identify the court in which each was filed, describe the nature of each suit and its disposition, and name "the attorneys involved." Request for production 10 asks Armijo to provide copies of pleadings from any lawsuits or administrative proceedings to which he has been a party. Armijo objected to the length of time covered by these discovery requests and provided the requested information for an eight-year period.

The Village contends that the information could lead to discoverable information related to Armijo's credibility and damages, in particular his claim for mental distress. Armijo responds that he provided all documents in his possession "and within the time periods agreed to by the parties." (Doc. 68 at 7.) It is not clear what agreement Armijo is referencing. The May 21 letter does not mention any agreement regarding litigation history, and Armijo's response earlier denied any agreement regarding matters other than medical history, tax information, and income. He further asserts that lawsuits prior to 2001 are irrelevant, that the information sought is a matter of public record, and that he has provided all the information in his custody and control. In reply, the Village notes that the response does not make clear whether Armijo is refusing to provide his litigation history beyond an eight-year period or whether his original answer actually covers his entire litigation history. The Village also notes that publicly accessible databases in New Mexico will not

cover lawsuits from other states and that these databases may not contain complete records for all years.

The Village has not fully articulated a theory of relevance for this evidence. *See Hammond*, 216 F.R.D. at 670. It is not readily apparent that Armijo's litigation history could lead to admissible evidence regarding his credibility. *See Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir.1988); *see also Van Deelen v. Johnson*, No. No. 05-4039-SAC, 2008 WL 4683022, at *2 (D. Kan. Oct. 22, 2008) (unpublished) (citing *Outley* for the proposition that "defendants cannot admit evidence of plaintiff's prior lawsuits for the purpose of proving that plaintiff is litigious"). And the supposition that the evidence could bear on Armijo's claim for mental distress is tenuous. The Village will have Armijo's medical records for a ten-year period. Armijo need not supplement his responses to interrogatory 27 or request for production 10.

Interrogatory 32: This interrogatory asks Armijo to provide information about any claims he has ever made for unemployment compensation. Armijo objected to the length of time covered by this request and provided information for the past eight years.

The Village argues that Armijo's unemployment claims will shed light into his employment history and thus could lead to admissible evidence regarding his credibility and damages and the Village's after-acquired evidence defense. In addition to asserting irrelevance, Armijo notes that the Village has an unlimited employment records release. Although the May 21 letter indicates that Armijo's attorney agreed to provide the requested information for a ten-year period, neither party mentions the letter in reference to this interrogatory.

In response to interrogatory 5, Armijo must provide his employment history for twenty years, including any disciplinary actions against him. This is sufficient. Armijo need not supplement his response to interrogatory 32.

Request for Production 9: This request seeks "[c]opies of any and all correspondence between you, your attorney or anyone else acting on your behalf and Defendants." Armijo objected on the grounds that the request is "unintelligible," violates the attorney-client privilege, and possibly pertains to documents possessed by Defendants. The Village's counsel later explained that she is seeking correspondence between Armijo (or any of his representatives, including his attorney) and any of the defendants. (Doc. 67 Ex. B.) Armijo did not supplement his answer or provide a privilege log after receiving this explanation. In the motion to compel, the Village requests that Armijo be required to submit a privilege log.

In his response to the motion to compel, Armijo states that he has no documents responsive to this request and criticizes the Village's attorney for seeking a privilege log for the first time in its motion to compel. He charges that the request for the log is retaliatory because he insisted on a privilege log from the Village's attorney. In reply, the Village attempts to refute Armijo's charges regarding the privilege log and persists in requesting one.

It is difficult to understand why counsel could not resolve this purported dispute without court intervention. Armijo must supplement his answer to request for production 9 by stating whether he has any documents responsive to the request, as it has been explained by the Village's attorney. If he withholds any documents on the basis of privilege, he must comply with FED. R. CIV. P. 25(b)(5).

IT IS SO ORDERED.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

11