**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**PAUL ARMIJO,**

       **Plaintiff,**

**vs.**                                                **CIV No. 08cv935 MV/WPL**

**VILLAGE OF COLUMBUS,**
**EDDIE ESPINOZA, in his individual capacity,**
**ARMANDO PERALES, in his individual capacity,**
**TRACY BOLDUC, in her individual capacity,**
**BLAS GUTIERREZ, in his individual capacity,**
**ROBERTO GUTIERREZ, in his individual capacity,**
**BRIAN HOULTIN, in his individual capacity,**
**ALLEN ROSENBERG, in his individual capacity,**
**LUNA COUNTY SHERIFF'S OFFICE,**
**SIXTH JUDICIAL DISTRICT ATTORNEY'S OFFICE,**
**CITY OF DEMING POLICE DEPARTMENT,**
**ADRIAN FLORES, in his individual capacity,**
**ERNIE SERA, in his individual capacity,**
**MIRABEL JIMENEZ, in his individual capacity,**
**ARNOLD CHAVEZ, in his individual capacity,**
**BORDER OPERATIONS TASK FORCE,**
**D & M SPORTING GOODS,**

       **Defendants.**

**PLAINTIFF'S RESPONSE TO DEFENDANT D & M SPORTING GOODS, LLC'S**
**MOTION FOR SUMMARY JUDGMENT ON COUNT V OF PLAINTIFF'S**
<u>**COMPLAINT AND REQUEST FOR ATTORNEYS' FEES**</u>

       **COMES NOW** Plaintiff Paul Armijo [hereinafter "Armijo"], by and through his counsel

of record, Law Offices of Michael E. Mozes, P.C. (Michael E. Mozes), and hereby submits his

Response to Defendant D & M Sporting Goods, LLC's [hereinafter "D & M"] Motion for

Summary Judgment on Count V of Plaintiff's Complaint and Request for Attorney's Fees. As

grounds therefor, Armijo states as follows:

## I. INTRODUCTION

This action arose out of a series of incidents principally occurring in a five-month period from September 2006 through January 2007.  Among the incidents related to Armijo's claims are interactions between Defendant D & M, employees of the Village of Columbus Police Department (including Armijo), and law enforcement officers who were members of the Border Operations Task Force [hereinafter "BOTF"].  In the course of these interactions, D & M made knowing and intentional misrepresentations regarding the purchase of six (6) Springfield 40 caliber pistols to the BOTF in a concerted effort to deprive Armijo of his constitutional rights. As a result of these conspiratorial acts, D & M participated in causing Armijo constitutional harms–including, but not limited, violations of Armijo's Fourth Amendment rights with respect to search and seizure.

D & M's claims that Armijo lacked "probable cause" to pursue his claims against D & M suffers from two serious fallacies: (1) "probable cause" is not the standard for the filing of Armijo's claims against D & M–the standard is whether Armijo plead a claim upon which relief could be granted and (2) the question of whether Armijo plead a claim upon which relief could be granted has been answered by this Court. On September 16, 2009, the Court issued its Opinion denying D & M's Rule 12(b)(6) motion to dismiss on the conspiracy claim now before the Court on summary judgment.  Doc. 82.

Throughout the course of this litigation, D & M has mischaracterized Armijo's claims, ignored the evidence supporting Armijo's claims, and either misunderstood or intentionally misinterpreted the evidence supporting the Section 1983 conspiracy claim.  This line of conduct is illustrated in the rhetoric spewed forth in the Introduction section of D & M's memorandum

brief which remarkably minimizes the evidence and makes outlandish accusations regarding the substance of Armijo's claims.  As the facts set forth herein demonstrate, Armijo's claims are based upon much more than a single document.

Counsel for Armijo did consult with D & M's attorney shortly after the filing of this matter in a good faith effort to discuss the evidence in the parties' possession at the time. Following a frank discussion of the documents reviewed and their significance, counsel for Armijo did state he was "troubled" by the fact that the evidence showed that D & M had manufactured a January 2007 receipt that contradicted the official Village of Columbus documents related to the purchase of the Springfields.

It is also true that Armijo has resisted dismissing D & M from this action because the evidence of record raises genuine issues of material fact on the events related to the purchase of the Springfields, the reasons for which D & M provided an inaccurate receipt to law enforcement authorities, and D & M's conduct throughout these events.  Apparently, D & M believes that if a party does not submit to its attempts to threaten, browbeat, and menace that the party has acted irrationally.  The facts, however, show otherwise.

## I.  STATEMENT OF DISPUTED MATERIAL FACTS

1.      Armijo hereby disputes Defendant's M.F. No. 8.  Whether the stub from the check referencing the D & M bid sheet or the purchase order number matched the information in Armijo's October 31, 2006-letter to D & M is irrelevant to the issues before the Court.  The relevant information from these documents is that these Village of Columbus documents prove that the Village only paid for four Springfields.  Def's. Exh. A, Depo. Exh. 13.

2.      Armijo hereby disputes Defendant's M.F. No. 10.  Armijo disputes that the

money D & M received on December 12, 2006 from Tracy Bolduc was for "the remainder of the balance due on the guns" because Reynolds knew at this time that Armijo was purchasing these weapons for his personal use.  Depo. of P. Armijo, pp. 248:3-7; 268:10-18; 269:1-3; 269:17-25; 279:11-14; 280:10-12, attached hereto as Exhibit 1.  The receipt at issue in this M.F. is unsigned on behalf of the Village of Columbus and written by Reynolds.   Def's. Exh. A, Depo. Exh. 10; Def's. Exh. B, p. 42: 20-23.

　　　　3.　　　Armijo disputes Defendant's M.F. No. 11.  Armijo disputes this M.F. for the following reasons: (1) the cash paid to D & M on December 12, 2006 was not in relation to any purchase made by the Village of Columbus, *see* SDMF No. 2 above; (2) any weapon purchases made by the Village of Columbus or any other law enforcement agency from D & M prior to November 2006 had always been paid through a purchase order with an accompanying check, Def's. Exh. B, p. 14:7-13.  The only purchases made with cash by the Village were for ammunition and holsters, which do not require the sort of U.S. DOJ and federal paperwork that must be submitted when purchasing a firearm, Def's. Exh. A, pp. 283:8-285:24 and 344:15-345:10; and (3) the standard procedures with respect to purchases made by the Columbus Police Department ("CPD") involved purchase orders.  Depo. of T. Bolduc, pp. 22:17-23:6, attached hereto as Exhibit 2.  In the circumstances where Armijo purchased ammunition for the CPD, he routinely requested reimbursement.  Def's Exh. A, pp. 283:2-286:6; 288:13-289:21.  There is no evidence in this record that Armijo requested reimbursement for the cash he gave D & M for the two Springfield firearms.

　　　　4.　　　Armijo hereby disputes Defendant's M.F. No. 12.  In this material fact, D & M attempts to establish that it created the January 26, 2007 receipt at the request of BOTF

personnel who were investigating Armijo at the time.  *See the extensive citations to the testimony of A. Perales*, Def's M.F. No. 12.  However, Reynolds himself disputes the facts as asserted here.  Reynolds testified that he created the receipt at the request of Tracy Bolduc who supposedly asked Reynolds to send the January 26, 2007 list because she could not read it.  Def's Exh. B, p. 44:4-13.  Bolduc, coincidentally, denies that she ever saw the January 26, 2007 list. Exh. 2, p. 37:3-7.

At the time that law enforcement supposedly needed additional information to verify the Springfields' serial numbers, law enforcement was in possession of both the modified bid sheet and November 17, 2006 receipt.   Modified Bid Sheet, October 26, 2006, attached hereto as Exhibit 3; November 17, 2006 Receipt, attached hereto as Exhibit 4.  There is nothing unclear or difficult to read regarding either of these documents.  In addition, Reynolds was in possession of the originals of these documents, which it would be safe to presume that if the copies are clear and legible, the originals would be likewise.

Whether the January 26, 2007 receipt differs or not in any material way from the November 17, 2006 receipt misses the mark–the record evidence shows that the actual purchase of the Springfields changed materially after November 17th.  After Armijo received the Springfields from D & M and before the Village processed the purchase order for the guns, a meeting took place with other officers of the CPD and the mayor.   Exh. 1, pp. 268, 10-18; 270:1-11; 272:2-4; 274:5-24; 275:3-8.  At this meeting, the mayor advised Armijo that the Village would only purchase four of the Springfields.  *Id.*

Armijo then decided to purchase the remaining two Springfields himself.  Exh. 1, pp. 268:10-18; 280:10-12.  Armijo advised Bolduc to notify Reynolds immediately that Armijo

would purchase the remaining two Springfields.  *Id.,* pp. 268:10-18; 272:10-14; 279:1-4.  Armijo

also stated to Bolduc that she tell Reynolds that if there were any problems with Armijo

purchasing the Springfields, Reynolds should so advise.  *Id.*, pp. 268:10-18; 269:17-22.  Armijo

understood that Bolduc had advised Reynolds of Armijo's desire to purchase the Springfields

and Reynolds stated that there were no problems.  *Id.*

On or about December 12, 2006, Armijo gave Bolduc cash for the balance due on the six

handguns originally ordered and received a receipt from Reynolds.  Exh. 1, pp. 269:1-3; 279:11-

14; 280:10-12; Def's. Exh A, Depo Exh. 10.  The receipt is unsigned.  It is Armijo's contention

that Bolduc did not sign the receipt on behalf of the Village because she knew at the time that

the two Springfields were being purchased by Armijo pursuant to prior conversations.  Indeed,

Bolduc admits that at some point in November-December 2006 she knew that Armijo had

purchased the weapons for himself.  Exh. 2, p. 26:16-25.  Reynolds notation that the weapons

were being purchased by the Village of Columbus was a sham.

Under these circumstances, the January 26, 2007 receipt, whether identical or not to the

November 17, 2006 receipt, is not dispositive of the questions of what Reynolds knew about the

purchase of the Springfields and what the purpose of the receipt was.

5.      Armijo hereby disputes Defendant's M.F. No. 13.  *See* paragraphs 2, 3, and 4 as

set forth above.  At the very least, these genuine fact issues raise disputes on what Reynolds

knew, when he knew it, and his motives behind issuing the January 26, 2007 receipt.

6.      Armijo hereby disputes Defendant's M.F. No. 14.  This alleged material fact is

immaterial.  Bolduc, not Armijo, was charged with ordering and purchasing firearms for the

Village of Columbus.  Exh. 1, p. 248:3-7.  Armijo would not have been in charge of filling out

6

the paperwork.

7.    Armijo hereby disputes Defendant's M.F. No. 15.  Exhibit F in D & M's motion

for summary judgment is a letter between counsel for the parties and contains no evidence

related to the fact assertion made.  Furthermore, Exhibit C is the Bolduc deposition which does

not contain 225 pages and makes no reference to involvement of the BOTF investigators with D

& M Sporting Goods.  Armijo hereby requests that should Defendant cite any record evidence in

support of this fact assertion in the Reply Brief that Armijo be given a full and fair opportunity to

dispute the alleged evidence.

### III.  STATEMENT OF SUPPLEMENTAL UNDISPUTED MATERIAL FACTS

Due to the fact that Defendant's listing of material facts is not sufficient to fully apprize

the Court of the record evidence relevant to Armijo's claims, Armijo hereby presents his

Statement of Supplemental Undisputed Facts:

1.    Bolduc and Reynolds were friends prior to Bolduc being hired into the CPD.

Exh. 2, p. 15:9-20.  In fact, Bolduc went to D & M on every one of her days off to look at

firearms.  Exh. 2, p. 29:5-11.

2.    The only information that Perales, the investigating BOTF officer, had at the end

of January 2007 regarding the allegation that the Village had purchased more than four .40

caliber handguns from D & M was the January 26, 2007 typewritten receipt from D & M.  Depo.

of A. Perales, p. 87:1-19, attached hereto as Exhibit 5.

3.    Perales received documents from Reynolds related to the purchase of the

Springfields on more than one occasion.  Exh. 5, p. 86:6-13.

4.    Reynolds indicated to Perales during the January 2007 investigation that he had

sold the Village six .40 caliber Springfield Armory firearms.  Exh. 5, p. 89:16-19.

5.      Reynolds produced the list in accordance with Perales' request to provide a listing

of the firearms purchased by the Village.  Exh. 5, pp. 89: 23-90:9.

6.      Despite being in possession of the documents and records related to the Village's

purchase of the Springfields from D & M, Perales' testimony is that he never learned of any

information that indicated that Armijo did not pay for the two Springfields out of his own

pocket.  Exh. 5, p. 68:8-13.  Indeed, the officer who signed off on the search warrant on Armijo's

home, Adrian Flores, admitted that the purchase order showed that the Village had purchased

only four weapons and that prior to the execution of the warrant there was no information that

the Village had purchased six firearms.  Depo. of A. Flores, p. 45:3-13, attached hereto as

Exhibit 6.

## IV.  ARGUMENTS AND AUTHORITIES

### A.      Summary Judgment Standard.

Summary judgment is only appropriate where the evidence of record demonstrates the

absence of a genuine issue of material fact and the moving party is entitled to judgment as a

matter of law.  Fed.R.Civ.P. 56(c); *Argo v. Blue Cross Blue Shield of Kansas, Inc.*, 452 F.3d

1193, 1199 (10th Cir. 2006); *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997); *Quaker

State Mini-Lube, Inc. V. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).  The

nonmovant is afforded a "wide berth" to prove a factual controversy exists.  *Jeffries v. State of

Kansas*, 147 F.3d 1220, 1229 (10th Cir. 1998)(quoting *Ulissey v. Shvartsman*, 61 F.3d 805, 808

(10th Cir. 1995).

The Court's task on a motion for summary judgment is to determine whether a genuine

issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). All factual disputes arising through the summary judgment record and any reasonable inferences associated with those disputes are to be resolved in favor of the party opposing summary judgment. *Argo*, 452 F.3d at 1199; *Fuersbach v. S.W. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006). This matter has numerous issues of material fact on the claims Armijo has brought against these Defendants and these Defendants are not entitled to summary judgment as a matter of law.

### B.    Plaintiff Does Have Evidence To Support His Claim Of Conspiracy Under 42 U.S.C. § 1983 And Had A Basis To File This Claim From The First Instance.

A plaintiff, to prevail on a 42 U.S.C. § 1983 conspiracy claim must plead and prove not only a conspiracy, but also an actual deprivation of rights. *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). Direct evidence of a conspiracy is rarely available. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994); *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990). The existence or no of a conspiracy is usually made through inferences flowing from relevant facts. *Id*.

The fundamental question in § 1983 conspiracy claims is whether officials of the state and a private party have acted in concert in effecting a particular deprivation of a plaintiff's constitutional rights. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 596 (10th Cir. 1999). Courts have fashioned a two-part test to determine whether a private person's actions constitute state action for the purposes of a § 1983 conspiracy claim. *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002). The first part of this test states that the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. *Id.*, *citing Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). The second element examines

whether the party charged with the deprivation is a state actor.  *Id.*

The Tenth Circuit has set forth a number of tests to determine whether a private party's conduct constitutes state action for the purposes of a § 1983 conspiracy claims: (1) the nexus test; (2) the symbiotic relationship test; (3) the public function test; and (4) the joint action test. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448-54 (10th Cir. 1995).  Although Defendant D & M has addressed all four tests in its motion for summary judgment, Armijo will solely address the test he believes relevant to his claims–the joint action test.

### 1.    The "joint action" test.

State action is present where a private actor is a "willful participant in joint action with the State or its agents."  *Gallagher*, 49 F.3d at 1453, *quoting Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  Appellate circuit courts have decided a number of cases where private actors acting in concert with law enforcement have been found to satisfy the "joint action" test.  *See, e.g., Murray v. Wal-Mart, Inc.,* 874 F.2d 555 (8th Cir. 1989); *Wagermann v. Adams*, 829 F.2d 196, 209-11 (1st Cir. 1987); *Carey v. Continental Airlines, Inc.*, 823 F.2d 1402 (10th Cir. 1987); *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984).

There is no record evidence in this matter that D & M was anything other than a "willful participant" in the provision of information the investigators–including the bogus January 26, 2007 receipt.  Defendant D & M's arguments that the January 26th receipt is identical to a November 17, 2006 receipt are unavailing.  At the time the November 17th receipt was produced, both parties admit that the Village had the clear intention of purchasing the six firearms. However, that arrangement had been modified over time and to the extent that the Village decided to purchase only four weapons, Armijo decided to purchase the remaining two firearms,

10

Armijo paid cash for these two firearms, D & M was advised of the change in the purchase of the firearms, and D & M accepted the cash payment in circumstances *where it had never before* accepted cash payment for weapons from a law enforcement agency.  Under these set of facts, the January 26, 2007 receipt evidences an intent to defraud and misrepresent the Springfield transactions.

It is Armijo's contention that the BOTF officers' admissions that they had no evidence showing that the Village had paid for the six Springfields demonstrates knowledge of the officers at the end of January 2007 that Armijo had paid for the two Springfields with personal funds. Simply put, the officers needed "evidence" showing that post-purchase of the two Springfields by Armijo that the Village paid for the firearms.  D & M provided the fictitious January 26th receipt which Perales admitted was the only evidence he discovered during the investigation that the Village purchased the six Springfields.  This "evidence" was, in turn, the linchpin of the unconstitutional search of the Armijo home as shown through the facts set forth in the warrant affidavit.

The "joint action" test mandates that the public official and private party share a common unconstitutional goal.  *Fernandez v. Mora-San Miguel Elec. Co-op, Inc.*, 462 F.3d 1244, 1252 (10th Cir. 2006).  The basis of the "joint action" test does not require a long-term relationship between the public and private actors.  *Gallagher*, 49 F.3d at 1453 (citations omitted).  Rather, "joint action" is satisfied by a single, concerted act that results in the deprivation of a constitutional right.  *Id.*  In addition, where there is substantial cooperative action between the state and private parties, the "joint action" test is met.  *Id.* at 1454.

It is not Armijo's contention that the "mere provision" of information to the BOTF officers constitutes a § 1983 violation.  Armijo argues that the reasons put forth by D & M for

the creation of the receipt raise genuine issues of fact regarding the motives and communications preceding the receipt's production.  Reynolds testified that he created the receipt at the request of Tracy Bolduc.  Bolduc denies this ever occurred.  The BOTF officers stated that a copy of the receipt was somehow faded or unclear.  However, copies of the receipt are neither unclear nor faded.  Further, as Defendant D & M readily admits, the BOTF officers went to D & M itself to gather documents.  It is reasonable that the officers would have reviewed the receipt or any copies at D & M and requested either originals or better copies.  There is no such evidence in the record.  The record regarding the creation of the receipt is contradictory and illogical–as contradictory and illogical as the information contained in the receipt itself.

D & M's arguments that the receipt does not indicate who paid for the Springfields and through what means are specious.  The receipt itself states that the Springfields were purchased "on behalf of the Columbus Police Department."  Def's. Exh. A, Depo. Exh. 6.  The receipt further notes that Armijo purchased the weapons for the Village.  *Id.*  The receipt also lists the recipient of the Springfields as "Columbus Police Department" and lists the CPD's address.

The several visits made by the BOTF investigating officers are sufficient to satisfy the "joint action" test.  Defendant D & M makes no argument on this point.  The testimony set forth herein and through D & M's opening brief on the motion for summary judgment prove up a collaborative and cooperative relationship between D & M and the BOTF investigating officers. It is simply incredible that Perales and Flores would testify that they had no evidence that anyone other than Armijo had purchased the two firearms at issue and that they had no evidence that the Village of Columbus had purchased anything other than four Springfields.  It is reasonable to infer from these admissions that the officers knew the January 26th receipt delivered prior to the execution of the warrants was fabricated and lacked authenticity and credibility.  Otherwise, the

officers would have testified that they had firm and reliable evidence that six Springfields had been purchased by the Village and Armijo had purloined two.

*Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982) enlightens Armijo's claims here.  In *Turpen*, which was a "joint action" case, the plaintiff challenged the seizure and subsequent sale of his truck.  *Id.* at 1343.  The plaintiff named as a defendant the towing company that towed and then sold the truck.  *Id.*  The Court found that the sale of plaintiff's property denied him of property without due process of law.  *Id.* at 1344.  The first part of the *Lugar/Gallagher* test was met in that an Oklahoma statute provided for the sale of plaintiff's property under the circumstances.  *Id.* at 1344-45.  In *Coleman*, the Court found that a private party that participated jointly with state officials in the seizure of disputed property is sufficient to qualify the party as a "state actor."  *Id.* at 1345.   Therefore, the second part of *Lugar* was satisfied as well.

In the case before the Court, Armijo meets both elements of the *Lugar/Gallagher* test regarding his claim that D & M was a "state actor."   There is no dispute between the parties that D & M exercised its right or privilege to cooperate with a criminal investigation, authorized and initiated under the criminal laws of the State of New Mexico and the 6th Judicial District Attorney's Office, aimed at uncovering controlled substances and alleged theft of government property.  These facts also satisfy the second requirement of *Lugar/Gallagher* in that a private party, D & M in this case, whose participation with state officials, the BOTF investigators, led to the uncovering of the only supposed evidence that produced the unconstitutional search of Armijo's home and the unconstitutional seizure of his person.  *See Coleman*, 697 F.2d at 1345.

D & M's reliance on Armijo's testimony to argue that Armijo "has no evidence" to support his conspiracy claims against D & M suffers the same sort of deficiencies noted in Armijo's Response to Motion for Summary Judgment filed by the BOTF Defendants.  Resp.,

Statements of Disputed Materials ¶¶ 2, 4, 5 and 7.  Other than the fact that this testimony is objected to throughout by Armijo's counsel, Armijo is not qualified to testify on "evidence of conspiracy," or a "deprivation of constitutionally protected rights."  Conspiracy claims are very rarely subject to first-hand knowledge of conversations and discussions related to the conspiracy–these claims are proven up through inferences gleaned from the facts.  Armijo's lack of personal knowledge of such conversations and discussions is not fatal to his claims.

With respect to Defendant's claims of a lack of agreement, Armijo has offered this Court and this Defendant has admitted to concerted action and agreement with state officials.  D & M has admitted that it provided the January 26, 2007 receipt to law enforcement officials, law enforcement officials have admitted to requesting records and documents related to the firearms transaction at issue, both D & M and law enforcement admit to conversations and communications in person and by telephone, and the parties clearly agreed that D & M would produce the false and deceptive receipt.

As to other arguments raised through D & M's memorandum brief: (1) there is no evidence in this record that Armijo had previously purchased weapons from D & M; (2) Bolduc was charged with completing any transaction paperwork related to the Springfields; and (3) the purchase order processed by the Village was in accordance with the modified bid sheet and Defendant's claims that the purchase order is false are inventions.

Armijo is entitled on summary judgment to any inferences associated with the facts as set forth above.  Based on the law supporting "joint action," Armijo raise genuine issues of material fact on whether D & M is a "state actor" and whether D & M conspired with the BOTF investigating officers and/or other law enforcement to deprive Armijo of his constitutional rights.  Summary judgment would be improper under these facts and the law–Armijo's claim should

come on for a trial before his peers.

**C.      There Is No Grounds For The Court To Award D & M Its Attorneys' Fees Incurred In Defending Against Armijo's Claims**.

It is unclear what relief D & M is seeking through this section of its memorandum brief. If D & M is seeking an award of attorney's fees pursuant to § 1988, then the request is premature.  The Court has not decided whether D & M is a prevailing party or not.  No cost bill has been presented and Armijo has not had the opportunity to respond to such.  However, to the extent D & M relies on *Crabtree v. Muchmore*, 904, F.2d 1475 (10th Cir. 1990) for its fees request, *Crabtree* is not supportive.

In *Crabtree*, the plaintiffs sued a judge and a number of attorneys.  *Id.* at 1476.  The judge and attorneys filed Rule 12(b)(6) motions to dismiss and the Court granted the motions as to the attorneys and dismissed the judge on the basis of absolute immunity.  *Id.*  The district court granted the judge's request for attorney's fees under Fed.R.Civ.P. 11 and 42 U.S.C. § 1988. *Id.*  A number of appeals ensued on the attorneys' fees issues, which centered on whether the attorneys should be compensated where the plaintiff's claims did not meet the 12(b0(6) standard. *Id.* at 1478-79.

In the case before the Court, this Court has already decided through the Order on Defendant D & M's motion to dismiss that Armijo has plead conspiracy claims under 42 U.S.C. upon which relief could be granted.  Doc. 82.   The Court denied D & M's motion to dismiss. The conspiracy claims are properly plead and supported in the pleadings and the record evidence.  This was not true in *Crabtree* and led to the imposition of attorney's fees against the plaintiffs.  *Crabtree*, 904 F.2d at 1479.

Prior to the initiation of this suit, Armijo's counsel had a frank and detailed conversation with D & M's counsel about the documents at issue regarding the transaction related to the

purchase of the Springfields.  Fact issues existed at the time and counsel for the parties agreed

that such issues existed.  Nevertheless, D & M's counsel has insisted that the filing of Armijo's

conspiracy claims is somehow "frivolous" or "a sham."  This is not a situation where Armijo,

like the plaintiffs in *Crabtree*, filed unreasonable claims in the face of immunity protection and

established record regarding the issues in play.

 D & M's continued protestations aside, the evidence does raise issues of fact on what D

& M knew about the transactions involving the purchase of the Springfields, when it knew the

information related to Armijo's purchase, why D & M accepted cash for a firearms purchase

from an alleged governmental entity where previously it had not done so, why D & M sold

firearms to the Village through a partial cash transaction where it had not previously done so,

whether Bolduc informed Reynolds and Armijo of Armijo's intent to purchase the firearms, and

the nature and content of the conversations between D & M and law enforcement officials

regarding the production of the January 26, 2007 receipt, and the reasons for which the receipt

was produced.

 **D.     The Court Should Not Hold Plaintiff's Attorney Jointly And Severally Liable
         For D & M's Attorney's Fees Under 42 U.S.C. § 1927.**

 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally
> the excess costs, expenses, and attorney's fees reasonably incurred because of
> such conduct.

*See also, Dominion Video Satellite v. Echostar Satellite, LLC*, 430 F.3d 1269, 1278 (10th Cir.

2005); *Resource Assocs. Grant Writing and Evaluation Servs.*, 2009 U.S. Dist. LEXIS 50182 *9-

10 (D.N.M. 2009).

 The general rule with respect to attorney's fees is that the respective parties bear their

own attorney's fees and costs.  *Resource Assocs.* at \*9.  Sanctions under § 1927 are appropriate

where an attorney acts "recklessly or with indifference to the law."  *Echostar*, 430 F.3d at 1278;

*Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987).  Further, sanctions may be awarded if

the attorney is "cavalier or bent on misleading the court, intentionally acts without a plausible

basis, or when the entire course of the proceedings was unwarranted."  *Echostar*, 430 F.3d at

1278.  Attorney's fees, however, should not be assessed lightly or without an on-record hearing.

*Resource Assoc.,* LEXIS 50182 at \*13-14.  Courts strictly construe their authority to assess §

1927 fees and costs.  *Braley*, 832 F.2d at 1512.  Such authority should only be utilized where the

evidence shows "serious and standard disregard for the orderly process of justice."  *Id., quoting*

*Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985).

The facts in this case are the following: (1) counsel for Armijo discussed with D & M's

counsel shortly after the initiation of this action the documents and circumstances related to the

firearms transaction and D & M's dealings with both the CPD and the BOTF investigators; (2)

Armijo prevailed on D & M's Motion to Dismiss, Doc. 82; and (3) Armijo voluntarily dismissed

the negligent misrepresentation and State civil conspiracy claims against D & M.  Doc. 93, in an

effort to bring before this Court only those claims Armijo contends the evidence supports.  The

agreement to dismiss the negligent misrepresentation claim took place early on in the litigation.

Despite D & M's wild allegations, this conduct does not demonstrate a "reckless indifference" or

"cavalier bent" or a "misleading of the court."

D & M's contention that Armijo's counsel was "troubled" in relation to the documents

because he believed the documents did not support Armijo's claim is indeed misleading and

reckless.  The documents reviewed at counsels' meeting pointed up a number of inconsistencies

concerning D & M's involvement in the firearms transaction–especially in light of the specific

allegations set forth in the Complaint.

The issue of the "bid sheet" is a "red herring"–no firearms were purchased on the basis of the original D & M bid sheet, no purchase order was processed on the basis of the original bid sheet, and no check was cut by the Village for the purchase of these firearms on the basis of the original bid sheet. Even a cursory review of the documents demonstrate such. The unsigned December 12, 2006 receipt in the context of Armijo paying cash for the firearms raised additional flags about the veracity of D & M's claims.

The Complaint specifically addressed these issues in paragraph 44 of the Complaint. Armijo's contentions that D & M knew that the Village had paid for four Springfields and Armijo the other two. The Complaint further stated that D & M knew this at the time the January 26, 2007 receipt was fabricated. Neither the meeting between counsel nor discovery to date has resolved these fact issues. Counsel for Armijo merely proceeded to litigate the claims initially set forth and seek out relevant facts pertinent to those matters.

The allegations related to the counterclaim and Armijo's arguments related thereto have been fully briefed in Plaintiff's Response to Defendant D & M Sporting Goods' Praecipe Requesting Default Judgment. Doc. 54. The Response was filed the same date the Praecipe was filed, March 26, 2009. The Court has not ruled on the Praecipe as of this date. However, the claim that counsel for Armijo had not investigated the claims against D & M is contradicted by the December 2008 conversations and the nature of the allegations set forth in the Complaint. Further, counsel for Armijo is open to allowing Armijo to supply this Court with an Affidavit regarding attorney-client discussions revolving around the Counterclaim should the Court decide that such a disclosure of privileged information is required.

The rank speculation and argument that D & M engages in to somehow attach

wrongdoing to counsel's interactions with Armijo constitutes neither proof nor evidence of "vexatious" or "frivolous" conduct.  Counsel for Armijo appropriately objected to questions aimed at disclosure of confidential information protected by the attorney-client privilege.  Rather than constituting evidence of improper behavior, counsel for Armijo was under a duty to object to such questions and advise his client not to answer.  If D & M's counsel truly considered the objections "vexatious" then he should have brought such to the attention of the Court for resolution.  Instead, counsel for D & M has chosen to include such irrelevant allegations in a memorandum brief in hopes that if enough mud is slung, something will stick.

Tenth Circuit opinions regarding the assessment of § 1927 attorney's fees and costs reveal that such fees are allowable where the claims were meritless, *Echostar*, 430 F.3d at 1279; the attorney changed versions of the facts, created sham disputes, ignored undisputed facts, shifted legal positions to avoid motions to dismiss and asserted claims to harass the defendant, *Eberley v. Manning*, 258 Fed. App'x. 224, 226 (10th Cir. 2007); plaintiff named improper defendants, such as the Governor of a state and violated legal standards related to prior criminal judgments, *Roth v. Green*, 466 F.3d 1179, 1189-90 (10th Cir. 2006); plaintiff without reason relitigated issues already decided and shifted legal arguments, *Braley*, 832 F.2d at 1512-13; and plaintiff repudiated a settlement agreement whose terms had been negotiated and agreed to by signature.  *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008).

None of these circumstances touch upon any of the fact issues present in the instant case.  There has been no shifting legal positions, no shifting factual positions, no relitigation of matters decided, no improper Defendant named on the conspiracy claims, and no repudiation of a settlement agreement.  The claims originally plead by Armijo have merit, as shown by the facts in dispute and those supplemented in this brief.  Defendant D & M has utterly failed to explain,

other than through hyperbole and speculation, what conduct counsel for Armijo has engaged in that has caused a multiplication of proceedings in this matter.

The purpose of § 1927 is to eliminate a vexatious and unreasonable multiplication of proceedings. *Steinart v. Winn Group, Inc.,* 440 F.3d 1214, 1222 (10th Cir. 2006). The use of § 1927 is limited to the multiplication of proceedings and not the initiation of proceedings. *Id.* at 1224-25. When reviewing conduct which may be sanctionable, the court must make an objective assessment of whether the conduct demonstrates an intentional or reckless disregard for the attorney's duties to the Court. *Hamilton*, 519 F.3d at 1202; *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998).

Some courts consider whether the attorney's conduct exhibits objective bad faith. *Eberley*, 258 Fed. App'x at 227-28; *Braley*, 832 F.2d at 1512. Where the § 1927 issue relies upon an exercise of the Court's discretion on a purely legal issue, the question of whether the Court engaged in an abuse of discretion is reviewed de novo. *Hamilton*, 519 F.3d at 1202; *Roth*, 466 F.3d at 1187.

In the absence of any bad faith or an intentional or reckless disregard for any duties counsel for Armijo has or had before this Court, the motion for fees pursuant to § 1927 must fail. D & M has completely failed to present any reasonable basis for the assessment of such fees, has neglected to show in what manner counsel for Armijo engaged in any vexatious conduct (it appears from D & M's pleading that it equates vexatious conduct with disagreement about the facts in dispute and the law applicable to those facts), and has unsuccessfully attempted to show a reckless indifference to any matter related to the pursuit of Armijo's claims.

The motion for summary judgment on the 28 U.S.C. § 1927 claims is ill-advised, contrived, and falls short of the standards required for the granting of fees. In consideration of

those opposing views, arguments, facts, and law, Armijo respectfully requests that the motion be

denied as to D & M's § 1927 claims.

## V.  CONCLUSION

In light of the foregoing arguments and factual contentions, Armijo respectfully requests

the Court deny D & M's motion for summary judgment in all respects and for such further relief

as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

 /s/ Michael E. Mozes
MICHAEL E. MOZES
Attorney for Plaintiff Armijo
5732 Osuna N.E.
Albuquerque, NM 87109
(505) 880-1200
(505) 881-2444 (FAX)

**I HEREBY CERTIFY** that a copy of
the foregoing pleading was served on
all counsel of record via the CM/ECF
system on this 23th day of October, 2009.

/s/ Michael E. Mozes
MICHAEL E. MOZES