IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL ARMIJO,
     Plaintiff,
vs.                                   Cause No. CV 08-935 MV/WPL

VILLAGE OF COLUMBUS,
EDDIE ESPINOZA, in his individual capacity,
ARMANDO PERALES, in his individual capacity,
TRACY BOLDUC, in her individual capacity,
BLAS GUTIERREZ, in his individual capacity,
ROBERT GUTIERREZ, in his individual capacity,
BRIAN HOULTIN, in his individual capacity,
ALLEN ROSENBERG, in his individual capacity,
LUNA COUNTY SHERIFF'S OFFICE,
SIXTH JUDICIAL DISTRICT ATTORNEY'S OFFICE,
CITY OF DEMING POLICE DEPARTMENT,
ADRIAN FLORES, in his individual capacity,
ERNIE SERA, in his individual capacity,
MIRABEL JIMENEZ, in his individual capacity,
ARNOLD CHAVEZ, in his individual capacity,
BORDER OPERATIONS TASK FORCE, and
D & M SPORTING GOODS,
     Defendants.

**DEFENDANT D&M SPORTING GOODS, LLC'S REVISED MOTION FOR SUMMARY
JUDGMENT ON COUNT V OF PLAINTIFF'S COMPLAINT
AND REQUEST FOR ATTORNEYS' FEES**

Defendant D&M Sporting Goods, LLC ("D&M") hereby moves, pursuant to Federal

Rule of Civil Procedure 56(b), for an entry of summary judgment in its favor on Plaintiff's sole

remaining count against D&M – Count V "42 U.S.C. § 1983, Fourteenth Amendment of the

United States Constitution, Conspiracy."  Further, D&M moves for an award of attorneys' fees

against both Plaintiff and his attorney, Michael Mozes, pursuant to 42 U.S.C. § 1988 and 28

U.S.C. § 1927.

Counsel for Plaintiff has indicated that Plaintiff opposes the Revised Motion.  All co-defendants, through their respective counsel, have indicated that they do not oppose this Revised Motion.

This Revised Motion comes after the Court denied Defendant D&M Sporting Goods, LLC's Motion for Summary Judgment on Count V of Plaintiff's Complaint and Request for Attorneys' Fees ("Original Motion") (Doc. 86) without prejudice.  In its Memorandum Opinion and Order (Doc. 133) at pages 8 and 9, the Court stated that "D&M's Statement of Material Facts does not set forth sufficient facts to show that D&M did not act in concert with law enforcement officers regarding the searches and arrest of Plaintiff."  To be sure, as Shaun Reynolds, the owner of D&M, sets forth in his affidavit, a copy of which is attached hereto as Exhibit G, at paragraph 3, D&M's Statement of Material Facts in its Original Motion was meant to convey the entire set of actions taken by D&M in connection with the allegations in this lawsuit.

In other words, there were no other actions taken by D&M in relation to this matter other than those put forth in D&M's Statement of Material Facts in its Original Motion.  Because, then, there exist no facts showing that D&M reported Plaintiff to officials, conspired with officials, interposed its judgment on officials, or exercised state power, D&M's Original Motion asked the Court to enter judgment in its favor on Plaintiff's Count V.  Further, because all D&M did was to provide truthful documentation to the Village of Columbus, D&M's customer in the transaction at issue in this lawsuit, concerning the transaction at issue in this lawsuit, D&M's actions could not have constituted an integral part of the deprivation of Plaintiff's rights.  Nonetheless, in order to address the Court's concerns raised in its Memorandum Opinion and

Order denying D&M's Original Motion, D&M submits this Revised Motion, together with the Affidavit of Shaun M. Reynolds.

As with D&M's Original Motion, this Revised Motion comes after a lengthy and expensive defense of Plaintiff's claim by D&M.  As the evidence put forward in this Revised Motion shows, Plaintiff had no factual or legal basis to file his claim against D&M and certainly no basis to prosecute his claim through summary judgment.  Moreover, Plaintiff's attorney had no basis to file Plaintiff's claim against D&M.  Plaintiff's entire justification for his claim against D&M consists of a single document that Plaintiff admits he did not see until eight months into the pendency of this lawsuit.  That document mirrors a receipt signed by Plaintiff in 2006 while he was employed as the Chief of Police of the Village of Columbus and that he admits was truthful.  Plaintiff's continued attempts to paint the document at the center of his claim as false and as induced by a conspiracy between D&M and law enforcement agencies is little more than a fraudulent and malicious attempt to cover up and profit from his own misdeeds.

D&M's attorneys contacted Plaintiff's counsel and sat down with him early in this litigation to share evidence and educate him as to the frivolous nature of Plaintiff's claim against D&M.  Although Plaintiff's counsel admitted at that meeting that he was "troubled" by documents provided to him, Plaintiff's counsel has been wholly unwilling to release D&M from this charade.  Plaintiff's counsel's reasoning for keeping D&M in this lawsuit has bordered on the absurd.  Even after D&M informed Plaintiff's counsel of its intent to countersue his client and to otherwise seek fees against him personally, Plaintiff's counsel has failed to react.

The Court should grant D&M's Revised Motion and award D&M its attorneys' fees against Plaintiff and his counsel, jointly and severally.

## Index of Exhibits

1.  <u>Exhibit A</u> – excerpts from the deposition of Plaintiff Paul Armijo (Doc. 88-1);

2.  <u>Exhibits to Exhibit A</u> – deposition exhibits from the deposition of Plaintiff Paul Armijo (Doc. 88-2);

3.  <u>Exhibit B</u> – excerpts from the deposition of Shaun M. Reynolds (Doc. 88-3);

4.  <u>Exhibit B-1</u> – deposition exhibits from the deposition of Shaun M. Reynolds, attached hereto (Doc. 134-1);

5.  <u>Exhibit C</u> – excerpts from the deposition of Tracy Bolduc (Doc. 88-4);

6.  <u>Exhibit D</u> – excerpts from the deposition of Armando Perales (Doc. 88-5);

7.  <u>Exhibit E</u> – Letter from Bryan Davis to Michael Mozes of Nov. 12, 2008 (Doc. 88-6);

8.  <u>Exhibit F</u> – Letter from Bryan Davis to Michael Mozes of Dec. 4, 2008 (Doc. 88-7);

9.  <u>Exhibit G</u> – Affidavit of Shaun M. Reynolds, attached hereto (Doc. 134-2).

## Standard for a Motion for Summary Judgment

Summary judgment is not "a disfavored procedural shortcut but rather [it is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. <u>Thrasher v. B & B Chem. Co.</u>, 2 F.3d 995, 996 (10th Cir. 1993).

## Statement of Material Facts

1.      In October of 2006, while he was employed as the Chief of Police of the Village of Columbus, New Mexico, Plaintiff sought and obtained a bid from D&M for the purchase of

4

six XD40 handguns for the Village of Columbus Police Department.  Ex. A at 292:19 – 293:16;
Ex. 11 to Ex. A; Ex. G ¶ 5.

2.      The bid sheet issued by D&M on October 26, 2006, specified that the Village of
Columbus Police Department could purchase six XD40 handguns from D&M at a total cost of
$3,144.00 – equal to $524.00 per gun.  Ex. A at 292:19 – 293:16; Ex. 11 to Ex. A; Ex. G ¶ 5.

3.      Pursuant to that bid sheet, Plaintiff drafted and signed a letter on October 31,
2006, on Village of Columbus letterhead, accepting the bid issued by D&M on October 26,
2006.  Ex. A at 275:17 – 276:7, 293:17-21; Ex. 7 to Ex. A; Ex. G ¶ 5.

4.      Plaintiff's October 31, 2006, letter to D&M stated that all six guns would be used
for the Village of Columbus Police Department, and it provided D&M with a purchase order
number, as required by D&M's bid.  Ex. A at 276:8-16, 308:19 – 309:13; Ex. 7 to Ex. A; Ex. 11
to Ex. A; Ex. G ¶ 5.

5.      Pursuant to Plaintiff's letter of October 31, 2006, Shaun Reynolds, the owner of
D&M, ordered six XD40 handguns for the Village of Columbus, and he received them on
November 17, 2006.  Ex. B at 31:12-20; Ex. 1 to Ex. B (receipt of Nov. 17, 2006); Ex. G ¶ 5.

6.      Upon receiving the six guns, Mr. Reynolds created a receipt, specifying that the
six guns were for the Village of Columbus, listing the serial numbers of all six guns, and stating
that the total cost of the six guns was $3,144.00, or $524.00 per gun.  Ex. B at 31:12-20, 32:15-
23; Ex. 1 to Ex. B (receipt of Nov. 17, 2006).

7.      On November 21, 2006, Plaintiff picked up the six guns from D&M and signed
the receipt indicating that all six guns were for the Village of Columbus and that each gun cost
$524.  Ex. A at 278:4-25, 312:16-25; Ex. 9 to Ex. A; Ex. G ¶¶ 5, 7, 8.

8.      On November 22, 2006, the Village of Columbus issued a check to D&M for $2,360.00.  The stub from that check referenced D&M's bid sheet of October 26, 2006, and it referenced the purchase order number provided to D&M by Plaintiff in his letter of October 31, 2006.  Ex. B at 36:7 – 37:9; Ex. 1 to Ex. B (stub from Village of Columbus check number 29761); see also Ex. A at 308:19 – 309:8; Ex. 7 to Ex. A.

9.      Once Mr. Reynolds opened the envelope containing the check and realized it was for the incorrect amount, he contacted Tracy Bolduc, an officer with the Village of Columbus Police Department.  Ms. Bolduc assured Mr. Reynolds that he would receive the remainder of the payment for the six guns.  Ex. B at 37:10 – 41:1; Ex. C at 29:5 – 30:22; Ex. G ¶ 6.

10.     On December 12, 2006, D&M received the remainder of the balance due on the six guns – $784.00 in cash – and issued a receipt made out to the "Village of Columbus" for the pay off of the balance due on those six guns.  Ex. A at 279:5-15, 336:20 – 337:25; Ex. 10 to Ex. A; Ex. B at 41:10 – 42:23; Ex. 1 to Ex. B (receipt of Dec. 12, 2006); Ex. G ¶¶ 5, 8.

11.     Prior to paying the remaining balance due on the six handguns on December 12, 2006, the Village of Columbus had made other cash purchases from D&M.  Ex. A at 283:8 – 285:24, 288:13 – 289:11, 344:15 – 345:10; Ex. B at 13:13 – 14:13.

12.     On or about January 26, 2007, Mr. Reynolds was contacted by Tracy Bolduc, an officer from the Village of Columbus Police Department, who participated in the firearms transaction and asked to provide a copy of D&M's file concerning the purchase of the six handguns.  Because the Village of Columbus indicated that it needed a clear list of the serial numbers of the six guns it purchased, Mr. Reynolds created a type-written list of those serial numbers.  The type-written List of Items Purchased produced by D&M on January 26, 2007, does not differ in any material respect from the November 17, 2006, receipt signed by Plaintiff.

6

Ex. B at 43:4 – 46:11; Ex. 1 to Ex. B (invoice of Nov. 17, 2006 and List of Items Purchased of Jan. 26, 2007); Ex. D at 102:15 – 106:18, 108:14 – 111:4; see also Ex. A at 340:5 – 341:20; and cf. Ex. 9 to Ex. A with Ex. 6 to Ex. A; see also Ex. G ¶¶ 6-7.

13.     Prior to creating the List of Items Purchased on January 26, 2007, Mr. Reynolds did not know of Plaintiff's alleged intent to purchase two of the handguns for Plaintiff's personal use.  Ex. A at 269:4-7, 273:18-19, 273:23 – 274:10, 276:17-21, 300:9 – 308:11, 327:20 – 330:20, 334:18 – 336:19; Exs. 11 & 12 to Ex. A; Ex. B at 27:1-25, 34:4-19, 42:6-13; Ex. 1 to Ex. B (altered bid sheet); Ex. C at 61:14 – 62:9; Ex. G ¶ 8.

14.     Although Plaintiff knew that if he was going to purchase firearms from D&M for his personal use he would have to complete a federal Alcohol, Tobacco, and Firearms Form 4473, he did not complete such a form with respect to any of the six handguns purchased by the Village of Columbus.  Nor did he ever ask D&M for such a form with respect to any of those six guns.  Ex. A at 137:25 – 140:5, 265:1 – 268:18, 269:4-16, 273:18-22, 294:23 – 296:4; Ex. 1 to Ex. A; Ex. G ¶ 8.

15.     No law enforcement officer or agency asked D&M to create any false documents or to conspire in the prosecution of Plaintiff for embezzlement.  See Ex. A at 159:23 – 160:24, 224:17 – 226:3, 243:8 – 246:5, 251:1-13, 338:1 – 345:10; Ex. B at 43:4 – 46:25; Ex. C at 61:14 – 62:4; Ex. D at 89:23 – 90:9, 103:4 – 111:4; Ex. G ¶ 10; see also Ex. G ¶¶ 11-16.

16.     D&M did not conspire with any state official or agency to allegedly deprive Plaintiff of his rights.  The only action taken by D&M in relation to the allegations in Plaintiff's lawsuit was to provide demonstrably truthful documentation to its customer, the Village of Columbus, and, later, to provide identical documentation to an agent from the Border Operations Task Force.  Ex. G ¶¶ 10-16.

17.     At the time that D&M provided documentation to the Village of Columbus – on or about January 26, 2007 – D&M did not know of any investigation or proposed prosecution of Plaintiff.  All D&M knew at that time was that its customer, the Village of Columbus, had asked for information concerning its purchase from D&M.  Ex. G ¶ 9, 10, 12, 16; Ex. B at 44:18 – 46:18.

18.     D&M subsequently provided documentation identical to that provided to the Village of Columbus to an agent from the Border Operations Task Force.  Ex. G ¶ 12; Ex. B at 43:25 – 45:2.  But no law enforcement officer or state actor ever interviewed Shaun Reynolds concerning the transaction, nor did Shaun Reynolds or D&M provide any further information concerning the transaction to any law enforcement officer or state actor.  Ex. B at 43:20 – 45:10; Ex. G ¶¶ 12, 13, 14, 15, 16.

19.     D&M did not report Plaintiff to any law enforcement agency, nor was D&M consulted concerning whether to investigate Plaintiff's activities or to seek prosecution of Plaintiff.  Ex. G ¶¶ 12-16; Ex. B at 43:4 – 46:25.

20.     The only role that D&M played in the investigation and attempted prosecution of Plaintiff was to provide truthful documentation to its customer and another law enforcement agency concerning the purchase of guns by the Village of Columbus without even knowing of any investigation or proposed prosecution of Paul Armijo.  Ex. G ¶¶ 1-16; see Statement of Material Facts ("Facts") ¶¶ 1-20.

## Argument

**I.    PLAINTIFF HAS NO PROOF TO SUPPORT HIS CLAIM OF CONSPIRACY UNDER 42 U.S.C. § 1983 AND HAD NO BASIS TO FILE THAT CLAIM IN THE FIRST INSTANCE.    D&M DID NOT CONSPIRE WITH AUTHORITIES.**

"A civil rights plaintiff proceeding under [42 U.S.C.] § 1983 must allege and prove that '(a) some person has deprived him of a federally protected right, and (b) the person who has deprived him of that right acted under color of state law.'"   Bewley v. City of Duncan, Nos. 97-6274 & 97-6321, 1998 U.S. App. LEXIS 11737, *7 (10th Cir. June 4, 1998) (quoting Houston v. Reich, 932 F.2d 883, 890 (10th Cir. 1991)).   "Under Section 1983, liability attaches only to conduct occurring 'under color of law.'"   Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1447 (10th Cir. 1995).   "Thus, the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'"   Id. (quoting Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988)) (brackets in original); see also Greater Callecita Neighborhood Ass'n v. Hyde Park Co., Civ. No. 99-837, 2000 U.S. Dist. LEXIS 21322, *5 (D.N.M. May 9, 2000) (Parker, J.) ("The 'under color of state law' requirement is a jurisdictional requirement under § 1983."), aff'd by Nos. 00-2398 & 00-2507, 2001 U.S. App. LEXIS 17699 (10th Cir. Aug. 8, 2001).[1]

---

[1] Although this motion focuses on the second requirement for a § 1983 claim – whether D&M, a private defendant, acted under color of state law – Plaintiff's remaining claim against D&M also fails if Plaintiff's federal constitutional rights have not been violated.  Houston, 932 F.2d at 890. Accordingly, if the Court determines, based on motions filed by co-defendants, that Plaintiff's federal constitutional rights have not been violated, dismissal of Plaintiff's Count V, conspiracy under § 1983 is also appropriate.

Here, Plaintiff has alleged that D&M conspired with public defendants to violate his constitutional rights.  See (Compl. (Doc. 1) ¶¶ 44, 115-122; Mem. Op. & Ord. (Doc. 82)).[2] D&M is a private defendant, organized in New Mexico as a limited liability company.  Ex. B at 7:7-12.  Shaun Reynolds is and at all times relevant to this matter has been the sole employee of D&M.  Ex. B at 15:6-12; Ex. G ¶ 2.  Because D&M is a private entity, in order to prevail on his claim of conspiracy under 42 U.S.C. § 1983, Plaintiff must prove that D&M's alleged actions were "state action" or taken "under color of law."  Gallagher, 49 F.3d at 1447.

As the Tenth Circuit noted in Gallagher, "[t]he [Supreme] Court has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." Gallagher, 49 F.3d at 1447.  Those tests include the "nexus" test, the "symbiotic relationship" test, the "public function" test, and the "joint action" test.  Id.  In applying each of these four tests, a court must bear in mind that, in order for liability to attach to a private defendant, "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'"  Id. (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)).  This "constitutional distinction between governmental action and private conduct . . . 'preserves an area of individual freedom by limiting the reach of federal law and federal judicial power.'" Gallagher, 49 F.3d at 1447 (quoting Lugar, 457 U.S. at 935).

It appears that Plaintiff does not intend to proceed against D&M under the nexus, symbiotic relationship, or public function tests.  (See Pl.'s Resp. Def. D&M Sporting Goods, LLC's Mot. Summ. J. on Count V of Pl.'s Compl. and Request for Attys.' Fees ("Original Response") (Doc. 99) at 10 ("Although Defendant D&M has addressed all four tests in its

---

[2] Plaintiff has voluntarily dismissed the other two claims he initially filed against D&M – Count XVIII (Negligent Misrepresentation) and Count XXI (Civil Conspiracy).  See (Stip. Mot. Dismiss Counts XVIII and XXI Against D&M Sporting Goods (Doc. 83)).

motion for summary judgment, Armijo will solely address the test he believes relevant to his claims – the joint action test.").)   In order to avoid waiving any argument it might have for summary judgment, however, D&M hereby incorporates by reference, see D.N.M.LR-Civ. 7.1(a), pages 8 through 12 of its Original Motion and the arguments contained therein explaining why D&M is not liable under the nexus, symbiotic relationship, and public function tests.

Under the joint action test, "[s]tate action is . . . present if a private party is a 'willful participant in joint action with the State or its agents.'"   Gallagher, 49 F.3d at 1453 (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)).   When applying the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."   Gallagher, 49 F.3d at 1453.   Allegations of conspiracy may form the basis for a claim of "joint action" between private defendants and government defendants under § 1983.   Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998).

"Just as with other tests for state action, the mere acquiescence of a state official in the actions of a private party is not sufficient" to establish state action under the joint action test. Gallagher, 49 F.3d at 1453.   Conversely, the mere acquiescence of a private party in a request for information by law enforcement authorities will not suffice to establish a conspiracy under § 1983.   See, e.g. Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983) ("The mere acquiescence of the bank employees to the investigation request of the FBI to view Fonda's bank records is, without more, insufficient to prove a conspiracy.").

Likewise, "[t]he mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under [§ 1983]." Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983).   This is true even where a plaintiff

shows that the private party provided false information to police officers. See Moore v. The Marketplace Restaurant, Inc., 754 F.2d 1336, 1352 (7th Cir. 1985) ("providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983"); Moore v. City of Desloge, No. 4:08CV1200, 2009 U.S. Dist. LEXIS 10016, *9 (E.D. Mo. Feb. 11, 2009) ("[P]roviding false information to an arresting officer is not, by itself, sufficient to state a claim against a private party under 42 U.S.C. § 1983." (citing Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 327 (7th Cir. 1978))); Annan-Yartey v. Honolulu Police Dept., 475 F. Supp. 2d 1041, 1047 (D. Haw. 2007) ("Nor do the Defendants' allegedly deliberately false statement to police make them state actors liable under section 1983.").

Plaintiff has alleged that D&M "fabricated" an invoice on January 26, 2006, providing false information to police officers at their request to support "bogus" charges brought against him. (Compl. ¶ 44). In his deposition, Plaintiff testified that the invoice to which his Complaint referred was a List of Items Purchased. Facts ¶ 12.[3] That list was little more than a clear copy of a receipt that Plaintiff had previously signed on behalf of the Village of Columbus. Facts ¶¶ 6, 7, 12, 15, 16, 17, 20. And yet Plaintiff persists in his claim that the list was somehow false, based solely on the fact that one gun and a portion of another gun had been paid for with cash, see Ex. A at 341:7 – 342:3, 344:15 – 345:4. Plaintiff continues in his denial of the truthfulness of the List of Items Purchased despite the fact that he admitted in his deposition that the list did not specify what party had paid for the guns and through what medium. Ex. A at 247:7-8; Ex. 6 to Ex. A. But even if the information on the list had been false, without evidence of concerted

---

[3] Plaintiff also testified that his deposition, which occurred more than eight months after the filing of this lawsuit, was the first time he had actually seen the list on which he bases his lawsuit. See Ex. A at 243:8-17, 244:18-24, 245:14-22, 251:1-13; Ex. 6 to Ex. A.

action between D&M and law enforcement authorities to deprive Plaintiff of his civil rights, Plaintiff's claim against D&M must fail.  See Benavidez; Moore.

"To prove a conspiracy between private parties and the state under Section 1983, the plaintiff must show a joint participation, agreement or 'meeting of the minds' to violate constitutional rights."  Aly v. Rocky Mountain Holding, L.L.C., No. 98-2273, 2000 U.S. App. LEXIS 383, *13-14 (10th Cir. Jan. 12, 2000) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)).  "A conspiracy necessarily involves a plan to accomplish a common goal, preconceived and agreed upon by the alleged conspirators."  Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir. 1990) (appendix).  Even if a private party shares the state's goal of successfully prosecuting an individual accused of criminal wrongdoing, that fact, without more, is insufficient to establish a conspiracy.  How v. City of Baxter Springs, No. 06-3022, 2007 U.S. App. LEXIS 4083, **25 (10th Cir. Feb. 22, 2007).

Plaintiff has no evidence of any "meeting of the minds" between D&M and state officials.  In Plaintiff's own words:

> Q:  . . . Count 5 is on Page 20 of your complaint.  Talks about conspiracy to violate the 14th Amendment. . . . Do you know if anybody at the Village of Columbus got together with D&M Sporting Goods to violate your Constitutional rights?
> A:  I can't answer that question.
> Q:  You don't have any facts today that –
> A:  No.
> Q:  Okay.  That any of my clients, Village of Columbus, violated your Constitutional rights by getting together with D&M, correct?
> A:  No.
> Q:  That's correct, right?
> A:  Yes.
> Q:  Okay.  Same question for Deming, City of Deming.  Do you have any facts to support any allegation that the City of Deming or any of their officials or employees got together with D&M Sporting Goods to conspire to violate your Constitutional rights?
> A:  No.
> Ex. A at 159:23 – 160:24.

13

Q: Okay.  Let's talk about this alleged conspiracy that's detailed in Count 5 of your complaint starting on Page 20.  . . .

. . .

Q: Okay.  So you're sitting here as the plaintiff in this lawsuit telling me that you cannot point to any facts or evidence that would show that my client and D&M engaged in a conspiracy to deprive you of your civil rights?

MR. MOZES: Objection to the form.

A: Not at this time, no.

Q: Can you point to any facts or evidence that suggests that they entered into any kind of agreement at all?

A: No, ma'am.

Ex. A at 224:17 – 226:3.

Q: Do you think [Shaun Reynolds] spoke with law enforcement about how to deprive you of constitutionally protected rights?

A: No.

Q: Do you think law enforcement came to Shaun Reynolds and said Shaun, can you help us string up Armijo?

A: I don't know if that was done.

Ex. A at 342:16-21.

Q: You don't have any evidence that Shaun Reynolds was asked to do anything improper?

MR. MOZES: Objection to the form.

A: No.

Q: You don't have any evidence that Shaun Reynolds agreed to do anything improper?

MR. MOZES: Same objection.

A: Not at this time, no.

Ex. A at 344:3-10.

Indeed, the only "evidence" of a conspiracy to which Plaintiff can point is his speculative hope that Mr. Reynolds must have known prior to January 26, 2007, when D&M created the List of Items purchased that he had "purchased" two of the six handguns for his own use.  Ex. A at 344:15 – 345:4.  But in order to survive a motion for summary judgment on a claim of conspiracy under § 1983, "there must be sufficient evidence of a conspiracy to prevent the jury from 'engaging in sheer speculation and conjecture.'"  Aly, 2000 U.S. App. LEXIS 383 at *14 (quoting Six v. Henry, 42 F.3d 582, 585 (10th Cir. 1994)).

The Tenth Circuit has "uniformly rejected claims of state action that are merely speculative in nature."  <u>Aly</u>, 2000 U.S. App. LEXIS 383 at *14 (citing <u>Gallagher v. "Neil Young Freedom Concert"</u>, 49 F.3d 1442, 1456 (10th Cir. 1995); <u>Carey v. Cont'l Airlines, Inc.</u>, 823 F.2d 1402, 1404 (10th Cir. 1987)); <u>see also</u> <u>Kennedy v. Smith</u>, No. 07-7035, 2007 U.S. App. LEXIS 29810 (10th Cir. Dec. 26, 2007) (plaintiff offered no evidence of any concerted action or agreement between governmental and private defendants to deprive plaintiff of his constitutional rights, thus summary judgment was appropriate); <u>Montgomery v. The City of Ardmore</u>, 365 F.3d 926 (10th Cir. 2004) (summary judgment appropriate where lack of any evidence of agreement between governmental and private defendants); <u>ACORN v. City of Albuquerque</u>, No. 98-2074, 1998 U.S. App. LEXIS 27783 (10th Cir. Oct. 29, 1998) (no joint action where evidence showed only that plaintiff complained to police and plaintiff did not establish the existence of any agreement between police and private defendant); <u>Lee v. Town of Estes Park</u>, 820 F.2d 1112, 1114 (10th Cir. 1987) (plaintiff unable to produce evidence showing any "prearrangement" between private defendant and police or that private defendant and police were "acting as a team," thus summary judgment appropriate).

In <u>Aly</u>, 2000 U.S. App. LEXIS 383, the Tenth Circuit affirmed the district court's grant of summary judgment on the plaintiff's claim of conspiracy under § 1983.  There, the plaintiff alleged that his private employer conspired with government actors with whom the private employer contracted.  As a result of that conspiracy claimed Plaintiff, the private employer fired him.  Although Plaintiff presented evidence that the governmental agents had complained about Plaintiff's performance and had spoken to Plaintiff's employer as recently as the day the decision to terminate Plaintiff was made, Plaintiff failed to show any specific agreement or concerted effort to deprive him of his job.  Based on the evidence presented by Plaintiff, a jury would be

required to speculate in order to find the existence of such agreement.   Accordingly, summary judgment was warranted.

In an attempt to keep his vexatious claim against D&M alive, Plaintiff will point to testimony from his deposition in which he testifies that Tracy Bolduc told Shaun Reynolds of Plaintiff's secret plan to purchase two of the handguns after Plaintiff had already picked the handguns up from D&M on behalf of the Village of Columbus.   See Ex. A at 268:10 – 269:7, 269:17 – 270:11, 272:5 – 273:19, 275:11-16, 314:5-14.   To be sure, as Plaintiff admitted in his deposition, he was not present for those alleged conversations and he merely "speculates" that they took place.   See Ex. A at 272:22-25.   Plaintiff's speculation will not operate to create a question of fact.   See, e.g., Aly, 2000 U.S. App. LEXIS 383.

Further, the Court need not sanction Plaintiff's unreasonable inferences that contradict a clear record presented on summary judgment.   Scott v. Harris, 550 U.S. 372 (2007).   Here, the only "proof" that Plaintiff has pointed to in an attempt to prop up his specious claim that Mr. Reynolds knew about Plaintiff's alleged plan to buy two of the firearms is the receipt of December 12, 2007.   Ex. A at 336:20 – 337:9; Ex. 10 to Ex. A.   That receipt shows that the "Village of Columbus" paid cash for the remaining balance due on the six handguns.   Ex. 10 to Ex. A.   Again, the Village of Columbus had paid cash for other purchases made at D&M as well. See Facts ¶ 11.   Plaintiff admits that he had previously purchased goods for the Village of Columbus Police Department from D&M with cash.   Ex. A at 283:8 – 285:24, 288:13 – 289:11, 344:15 – 345:10.

The mere fact of a cash payment would not have caused any suspicion on the part of D&M.   That is particularly true, given that the cash payment was equal to approximately one and one-half – not two – guns.   Facts ¶¶ 7, 10.   Further, the check received by D&M referenced

D&M's original bid sheet for the sale of six guns to the Village of Columbus and contained the same purchase order number referenced in Plaintiff's letter of October 31, 2006, accepting that bid.  Facts ¶ 8.  Despite the fact that Plaintiff had previously purchased guns, including from D&M, and he knew that he was required to complete a federal Alcohol, Tobacco, and Firearms Form 4473, he never sought to fill out that form and never alerted D&M to the fact that he allegedly intended to purchase two of the guns.  Facts ¶¶ 13-14.

The only evidence bearing on the issue of D&M's knowledge of Plaintiff's secret scheme shows that Mr. Reynolds did not know at any time prior to the time he created the List of Items Purchased about Plaintiff's alleged intention.  Facts ¶¶ 13.  Mr. Reynolds testified in his affidavit directly that "[p]rior to creating that List of Items Purchased, I did not know of any alleged undisclosed intention by then-Chief Armijo to purchase two of the six guns for his personal use."  Ex. G ¶ 8.  Plaintiff has no evidence to contradict that testimony.

D&M did not know that Plaintiff had falsified D&M's bid sheet and falsely obtained a purchase order from the Village of Columbus for an amount equal to more than four guns.  See Ex. A at 300:9 – 308:11, 319:10 – 320:12; Exs. 12 & 13 to Ex. A; see also Ex. G at ¶ 12 ("At the time of the events in question (January 26, 2007), I had no reason to suspect then-Chief Armijo of any wrongdoing, and, again, I did not then know of any pending investigation or possible prosecution of then-Chief Armijo for wrongdoing.").  Nor did Mr. Reynolds ever see the falsely-obtained purchase order prior to the inception of this lawsuit.  Ex. B at 24:19 – 26:5.  Plaintiff's attempt to impute D&M with some knowledge that it could not have had is nothing more than an effort to cover up his own misdeeds.

Plaintiff's claim against D&M is not supported by proof.  In particular, Plaintiff has adduced no proof whatsoever of any agreement or meeting of the minds between D&M and law

enforcement to deprive him of his constitutional rights. See Facts ¶ 15. Without such proof, Plaintiff's claim invites nothing more than rank speculation. Cf. Kennedy; Carey; Montgomery; ACORN; Lee.

The evidence shows only that D&M acquiesced in a simple request by law enforcement for information held by D&M. Cf. John Hancock Mut. Life Ins. Co. v. Anderson, No. 90-1749, 1991 U.S. App. LEXIS 11877, *7 (4th Cir. June 12, 1991) (summary judgment appropriate where "at most that John Hancock merely acquiesced in, and did not interfere with, the police investigation of [the plaintiff's wife's] death"); Faust v. The Walt Disney Co., No. C99-1386, 2000 U.S. Dist. LEXIS 6781, *15 (N.D. Ca. May 2, 2000) (summary judgment granted where "the uncontroverted evidence shows that Disney merely cooperated with police officers in the exercise of their independent discretion in a criminal investigation").

To be perfectly clear, D&M did not report Plaintiff to authorities and did not even know of the proposed investigation and prosecution against Plaintiff when D&M provided information concerning the handgun purchase to the Village of Columbus and the Border Operations Task Force. Facts ¶¶ 16-20. D&M did not have any substantive discussion with law enforcement concerning Plaintiff's deeds. Facts ¶¶ 16, 18, 19. Indeed, at the time that D&M provided the documentation at the request of the Village of Columbus, D&M knew only that it was providing documentation to its customer, the Village of Columbus, concerning a transaction in which the Village of Columbus had engaged with D&M. Facts ¶ 17. No law enforcement officer ever asked D&M to provide false documentation, and D&M did not provide false documentation. Facts ¶¶ 15, 16, 17, 20. D&M did not conspire with law enforcement authorities to allegedly violate Plaintiff's rights, because the only role that D&M played in relation to the allegations

made by Plaintiff was to provide truthful documentation concerning a purchase of firearms from D&M.  Facts ¶¶ 16-20.

As he did in his Original Response, Plaintiff will no doubt point to <u>Coleman v. Keifer Wrecker Service</u>, 697 F.2d 1341 (10th Cir. 1982), and argue that it somehow supports his claim or allows him to avoid summary judgment.  There, the Tenth Circuit determined that a plaintiff had asserted a cognizable claim for state action against a private towing company, where the towing company's actions constituted an "integral part" of the state's deprivation of the plaintiff's property rights.  But <u>Coleman</u> bears no relation to the present case and does not inform the Court's decision here.

In <u>Coleman</u>, the state seized property of the plaintiff in connection with the plaintiff's arrest for murder.  Among the property seized was a camper truck owned by the plaintiff.  The state hired a private towing company to tow and store the camper.  After the camper had been stored for some time, and without the plaintiff's knowledge or consent, the state authorized the towing company to sell the camper to pay the storage bill owed by the state.  Although title to the camper was still held by the plaintiff, the towing company acquiesced in the state's proposal, selling the camper and profiting from the sale, without providing any notice to the plaintiff or opportunity to the plaintiff to pay the bill.  Thus, in <u>Coleman</u>, the towing company's action was integral to the state's seizure and wrongful disposition of the plaintiff's property.

Unlike in <u>Coleman</u>, there was no concerted effort in the present case between D&M and any state actor.  Here, D&M only provided information concerning the sale of firearms to the Village of Columbus to the Village of Columbus and the Border Operations Task Force when requested to do so.  Facts ¶¶ 12, 15, 16, 18.  D&M had no role in reporting Plaintiff's activities, in making any judgment concerning whether and to what extent to investigate Plaintiff, or in

19

providing any judgment or assistance to state actors in relation to their investigation and proposed prosecution of Plaintiff.  Facts ¶¶ 16, 18, 19, 20.  D&M did not even know of the investigation and proposed prosecution of Plaintiff when it provided the documentation.  Facts ¶ 17.  D&M provided documentation containing information that was already in the possession of state actors, albeit in a less easy-to-read form.  Facts ¶ 17.  D&M did not carry out any state function as did the towing company in <u>Coleman</u>.

As the Tenth Circuit stated in <u>Benavidez</u>, "[t]he mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under [§ 1983]."  722 F.2d at 618.  That is the situation faced in this case, and the Court should grant D&M's request for summary judgment.

## II.    THE COURT SHOULD AWARD D&M ITS ATTORNEYS' FEES INCURRED IN DEFENDING AGAINST PLAINTIFF'S FRIVOLOUS CLAIM.

"In any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 USCS §§ 1981-1983, 1985, 1986] . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  In order to determine whether an award of attorneys' fees is appropriate under § 1988, a district court "must look to the merits to the extent of determining whether the action was 'frivolous, unreasonable, or without foundation.'"  <u>Crabtree v. Muchmore</u>, 904 F.2d 1475, 1477-78 (10th Cir. 1990) (quoting <u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978)).  Thus, the Tenth Circuit in <u>Crabtree</u> determined that the district court had abused its discretion in declining to award fees pursuant to § 1988.

There, the circumstances showed that the plaintiffs were aware of prior decisions labeling conveyances of property to them by their parents as fraudulent or "shams" prior to filing a lawsuit alleging a constitutional deprivation of rights in that property.  The plaintiffs were also

aware, prior to filing suit, of other instances of fraud committed by their parents concerning the property at issue.  Accordingly, the Tenth Circuit surmised that the plaintiffs' attempts to make out a conspiracy claim under § 1983 against a judge and some of the attorneys involved in the proceedings was nothing more than a bad faith attempt to involve persons clearly not responsible for their predicament.

The Tenth Circuit's opinion in <u>Crabtree</u> informs the present case.  Here, Plaintiff has since the inception of this lawsuit sought to hold D&M, a private party, liable for a conspiracy with government officials.  But Plaintiff knew well before his attorney ever filed this lawsuit that he had failed to disclose to D&M any intention to purchase two of the six handguns bought by the Village of Columbus.  <u>See</u> Facts ¶¶ 13, 14.  Further, despite never having seen the January 26, 2007, List of Items Purchased, Facts ¶ 12, Plaintiff went along with his attorney's characterization of that list as false.  Ex. A at 243:8-17, 244:18-24, 245:14-22, 251:1-13; Ex. 6 to Ex. A.

Plaintiff has further persisted in this fraudulent lawsuit against D&M based on the sham issue that D&M "must have known" that Plaintiff purchased two of the handguns for his personal use, because the Village of Columbus paid for a portion of the total price with cash.  Ex. A at 336:20 – 337:9; Ex. 10 to Ex. A.  As set forth <u>supra</u> in Section I(D), pages 17 and 18, Plaintiff engaged in a pattern of targeted obfuscation, alteration of documentation, and covert maneuvering in order to fleece the Village of Columbus out of two guns that it ordered from D&M.  He did not alert D&M to any of his actions, he has no proof that anyone alerted D&M to any of his actions, and he had no evidence of any conspiracy prior to filing the current lawsuit.  Plaintiff's behavior has harmed D&M greatly, without cause, and Plaintiff should be held accountable for it.  <u>Cf.</u> <u>Crabtree</u>.

### III.     THE COURT SHOULD HOLD PLAINTIFFS' ATTORNEY JOINTLY AND SEVERALLY LIABLE FOR D&M'S ATTORNEYS' FEES, BY VIRTUE OF 42 U.S.C. § 1927.

"Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   28 U.S.C. § 1927.   The Tenth Circuit has "repeatedly expressed [its] concern with the unnecessary burdens, both on the courts and on those who petition them for justice that result from unreasonable, irresponsible and vexatious conduct of attorneys as well as parties."   Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc).   Thus, under § 1927, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable."   Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1202 (10th Cir. 2008) (quotation marks and citation omitted).

The Tenth Circuit has upheld awards of attorneys' fees against a plaintiff's counsel in a number of situations.   In Roth v. Green, 466 F.3d 1179 (10th Cir. 2006), for instance, the Tenth Circuit held that the district court had not abused its discretion in awarding fees to defendants who bore only a tangential relationship to the thrust of the plaintiff's claim.   There, plaintiff's counsel filed suit against a large number of named defendants and 50 "John Doe" defendants, "ignor[ing] the realities of [those] Defendants' non-involvement in the circumstances applicable to his clients."   Id. at 1186.

Similarly, in an appeal from the District of New Mexico (Johnson, J.), the Tenth Circuit in Eberly v. Manning, No. 06-2337, 2007 U.S. App. LEXIS 28465 (10th Cir. Dec. 7, 2007), affirmed an award of attorneys' fees against an attorney where the plaintiffs and their attorney manufactured sham disputes and engaged in obfuscation to keep their case alive.   There, the core

issue was the existence and scope of an easement on the plaintiffs' property. Evidence showed that the plaintiffs knew that the easement existed and was forty feet wide. Despite that fact, they and their attorney made much of the defendants' widening of a road on the easement to thirty feet – within the boundaries of the existing easement. Accordingly, an award of attorneys' fees against plaintiffs' attorney based on the filing of the complaint and prosecution of the action was warranted. As the Tenth Circuit noted, "[w]hen an attorney pursues meritless claims, the course of the proceedings is unwarranted and sanctions are justified." Id. at **10.

Here, Plaintiffs' attorney, Michael Mozes, has continued to chase after D&M for money despite the fact that he has known since very early in the litigation – if not before the litigation commenced – that Plaintiffs' claim of conspiracy under § 1983 was baseless. Mr. Mozes filed this action in October of 2008. See (Compl.). Upon being retained by D&M, D&M's counsel reviewed the documents provided by D&M, including Plaintiff's letter of October 31, 2006, in which he ordered, on behalf of the Village of Columbus, six handguns. See Facts ¶ 4. D&M's counsel also reviewed the bid sheet issued by D&M on October 26, 2006, Facts ¶ 2, the receipt of November 17, 2006, which was signed by Plaintiff, indicating receipt of six handguns on behalf of the Village of Columbus, Facts ¶¶ 6, 7, and the receipt issued on December 12, 2006, indicating that the "Village of Columbus" had paid the remaining balance due on the six handguns, Facts ¶ 10. Counsel for D&M then arranged a meeting with Plaintiff's counsel. See Ex. E; Ex. F. D&M's counsel then met with Plaintiff's counsel in December of 2008, reviewed the documents with Plaintiff's counsel, and explained why Plaintiff's claim against D&M was meritless, particularly given the fact that the January 26, 2007, List of Items Purchased was little more than a clean copy of the receipt signed by Plaintiff in November of 2006. See Facts ¶12.

Although Plaintiff's counsel admitted that he was "troubled" by the documents, he insisted that his client would prevail on his claims against D&M.  Among other bases for his presumption, Plaintiff's counsel pointed to the bid sheet that was fraudulently altered by his own client as "proof" that D&M was engaged in a conspiracy.  Of course, his client admitted in his deposition that he had altered the bid sheet and not told D&M about it.  <u>See</u> Ex. A at 300:9 – 308:11, 319:10 – 320:12; Exs. 12 & 13 to Ex. A.  Even if during the December meeting Plaintiff's counsel had truly believed that the altered bid sheet was a product of D&M, a small amount of investigation (speaking to his client) would have revealed the truth.  Unfortunately for D&M, however, Plaintiff's counsel has not been overly interested in speaking to his client.

As an example of that, after D&M's counsel met with Plaintiff's counsel in December of 2008 and Plaintiff's counsel refused to relent in the claims against D&M, D&M's counsel alerted Plaintiff's counsel orally and in writing that D&M intended to file a counterclaim against Plaintiff for malicious abuse of process.  On February 9, 2009, D&M filed its counterclaim against Plaintiff.  (Doc. 42).  D&M referenced that counterclaim and the damages accruing thereunder in its initial disclosure statement to Plaintiff's counsel, which it served on March 9, 2009.  <u>See</u> (Cert. of Service (Doc. 45)).  Then, on March 26, 2009, because Plaintiff had not answered D&M's counterclaim, D&M filed its Praecipe, seeking to have the Clerk of Court enter a default against Plaintiff.  (Doc. 53).

The Praecipe did not prompt Plaintiff to answer D&M's counterclaim.  But in his Response to Defendant D&M Sporting Goods' Praecipe Requesting Default Judgment (Doc. 54) at page 3, Plaintiff's counsel indicated that he was "ready and willing at the earliest possible to answer the allegations of the counterclaim."  However, nearly six months later, when counsel for D&M questioned Plaintiff at his deposition, Plaintiff testified that he had not even known about

D&M's counterclaim prior to his deposition.  Ex. A at 251:1-13.  Putting aside for the moment the ethical implications of answering a complaint or counterclaim without first consulting with a client, D&M's counterclaim contained allegations concerning Plaintiff's personal knowledge and intent.  See (Countercl. ¶¶ 10, 12, 13, 14, 15, 16, 17).  It is thus unclear logically how Plaintiff's counsel could have answered the counterclaim without consulting his client.  But Mr. Mozes's failure to communicate with his client and investigate the claims against D&M did not stop there.

Mr. Mozes simply treated Plaintiff's claim against D&M as his own, even negotiating over the fate of that claim without first consulting with his client.  See Ex. A at 261:9 – 264:22.  Mr. Mozes would not even let his client answer questions about his intent with respect to his claim against D&M during Plaintiff's deposition.  Id.  In addition to his apparent failure to adequately investigate Plaintiff's claim against D&M and to turn a blind eye to facts showing that that claim is and has been frivolous, Mr. Mozes has continued to create new justifications for continuing his prosecution of the claim against D&M, despite a continued string of deposition testimony showing that there was no conspiracy between D&M and any state actor.

Even if Mr. Mozes's behavior were "in nowise among the most striking or egregious to reach [this] Court . . . sanctions are not reserved for the worst offenders."  Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1203 (10th Cir. 2008).  "This is particularly true of sanctions under § 1927, which . . . are levied to compensate the victims of dilatory practices, not as a means of punishment."  Id.  "Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible."  Id. (citing Braley, 832 F.2d at 1512).

D&M has been harmed by this groundless litigation, and an award of fees under § 1927 is appropriate.  Cf. Cruz v. Savage, 896 F.2d 626, 634 (1st Cir. 1990) (Affirming district court's grant of attorneys' fees against plaintiffs' counsel under § 1927, where district court found that plaintiffs' counsel had engaged in "obfuscation of the issues, hyperbolism and groundless presumptions" during the pendency of the case and where "the plaintiffs' attorney's zeal blinded her to the realities of the case and interfered with her professional performance."); Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 618 (1st Cir. 1988) ("If the vexatiousness of the descriptive words did not unnecessarily belabor meritless proceedings, counsel's failure to properly investigate the facts prior to filing suit and his failure to withdraw the complaint when the facts were revealed to him by defendants' attorney during the early stages of discovery certainly had that effect."); Foster v. Mydas Assocs., Inc., 779 F. Supp. 614 (D. Mass. 1991) (Awarding attorneys' fees under § 1988 upon finding that the plaintiffs claims "clearly became groundless as discovery progressed" and where "plaintiffs and their counsel should have been aware of that fact."); CTC Imports & Exports v. Nigerian Petroleum Corp., 739 F. Supp. 966 (E.D. Pa. 1990) ("§ 1927 represents a continuing obligation upon counsel to refrain from dilatory and abusive tactics and to avoid prolonging meritless claims.").

The Court should award D&M its attorneys' fees against Plaintiff's counsel under § 1927.

### Conclusion

For all the foregoing reasons, the Court should grant summary judgment in favor of D&M on Plaintiff's remaining claim against D&M – his Count V, Conspiracy under 42 U.S.C. § 1983.  In addition, pursuant to 42 U.S.C. § 1988, the Court should order Plaintiff to pay D&M its costs and attorneys' fees incurred in defending this matter.  Further, the Court should award

D&M its costs and attorneys' fees against Plaintiff's counsel for his unreasonable and vexatious pursuance of Plaintiff's frivolous case against D&M.  In order to avoid confusion of the issues presented in this summary judgment motion and motion for attorneys' fees, the Court should determine the amount of the fees award in separate briefing following the grant of this motion.

DAVIS & GILCHRIST, P.C.

By: _____
        William G. Gilchrist
        Bryan J. Davis
        117 Bryn Mawr, S.E.
        Albuquerque, New Mexico 87106
        (505) 435-9908
        Attorneys for Defendant D & M Sporting Goods, LLC

I hereby certify that this document was
served on all counsel of record on the
date this document was filed with the
Court, by virtue of the Court's cm/ecf
System.

_____
William G. Gilchrist