IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL ARMIJO,

        Plaintiff,

v.                                                      Civ. No. 08cv935 MV/WPL

VILLAGE OF COLUMBUS,
EDDIE ESPINOZA, in his individual capacity,
ARMANDO PERALES, in his individual capacity,
TRACY BOLDUC, in her individual capacity,
BLAS GUTIERREZ, in his individual capacity,
ROBERTO GUTIERREZ, in his individual capacity,
BRIAN HOULTIN, in his individual capacity,
ALLEN ROSENBERG, in his individual capacity,
LUNA COUNTY SHERIFF'S OFFICE,
SIXTH JUDICIAL DISTRICT ATTORNEY'S OFFICE,
CITY OF DEMING POLICE DEPARTMENT,
ADRIAN FLORES, in his individual capacity,
ERNIE SERA, in his individual capacity,
MIRABEL JIMENEZ, in his individual capacity,
ARNOLD CHAVEZ, in his individual capacity,
BORDER OPERATIONS TASK FORCE, and
D & M SPORTING GOODS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendant D&M Sporting Goods, LLC's Revised Motion for Summary Judgment on Count V of Plaintiff's Complaint and Request for Attorneys' Fees. (Doc. 134). For the reasons stated below, the Court will grant summary judgment in D&M Sporting Goods, LLC's favor as to Count V of Plaintiff's complaint.

**BACKGROUND**

      Some of the events leading up to this case occurred on January 24, 2007, when the Mayor of the Village of Columbus placed Plaintiff Paul Armijo, who at the time was the Chief of Police

for the Village of Columbus, on administrative leave and allegedly battered Plaintiff.  (*See* Complaint (Doc. 1) ¶¶ 22-34 at pp. 4-6).  Plaintiff then filed a report with the New Mexico State Police regarding the alleged battery.  (*Id.* ¶ 36 at pp. 6-7).  About that same time, some law enforcement agencies began an investigation into allegations of misconduct involving Plaintiff.  (*Id.* ¶ 37 at p. 7).  Plaintiff contends that this "investigation was motivated by reprisal due to [Plaintiff's] filing of the police report for the January 24, 2007 [battery] incident."  (*Id.*).  Plaintiff alleges *inter alia* that as a result of the investigation, several Defendants violated his constitutional rights by conducting unreasonable searches and seizures, wrongfully arresting him, and falsely imprisoning him.  (*Id.* at pp. 7-23).  The searches and arrest were based, in part, on allegations that Plaintiff stole two of six handguns purchased by the Village of Columbus.  (*Id.* ¶¶ 40-45 at pp. 8-9).

In Count V of his complaint, Plaintiff alleges that D&M Sporting Goods, LLC ("D&M") conspired with the governmental Defendants to violate Plaintiff's constitutional rights.  (*Id.* ¶¶ 115-122 at pp. 20-21).  D&M is a private entity that sells firearms.  D&M's involvement in the events leading up to this case began in October 2006 when Plaintiff, while employed as the Chief of Police of the Village of Columbus, sought a bid from D&M for the purchase of six handguns for the Village of Columbus Police Department.  (Doc. 134 at pp. 2-4).  D&M eventually delivered six handguns to Plaintiff.  (*Id.* at p. 5)  Plaintiff contends that the Village of Columbus only purchased four of the handguns and that he purchased the remaining two handguns for his personal use.  (Doc. 99 at pp. 5-6).  Plaintiff also contends that D&M provided law enforcement agents with a "fictitious" receipt showing that the Village of Columbus purchased six handguns, that the "fictitious" receipt was the only evidence that the Village of

Columbus purchased six handguns, and that the "fictitious" receipt was "the linchpin of the unconstitutional search." (*Id.* at 11). Plaintiff argues that because D&M was a willful participant in joint action with law enforcement agents, D&M is a state actor under 42 U.S.C. § 1983. (*Id.* at pp. 10-14).

In October 2009, D&M filed its original Motion for Summary Judgment on Count V of Plaintiff's Complaint and Request for Attorneys' Fees. (Doc. 86). This Court issued a Memorandum Opinion and Order denying D&M's original motion without prejudice because D&M's Statement of Material Facts in its original motion did not set forth sufficient facts to show that D&M did not act in concert with law enforcement officers. (Doc. 133). Shortly thereafter, on September 29, 2010, D&M filed the instant revised motion for summary judgment, which, among other things, included additional facts and exhibits. (Doc. 134). On October 13, 2010, Plaintiff filed his response to the revised motion (Doc. 140), in which he incorporated his response to D&M's original summary judgment motion (Doc. 99). D&M filed its reply brief on October 29, 2010 (Doc. 146), which likewise incorporates by references D&M's reply in support of its original motion (Doc. 102).

## THE PARTIES' STATEMENTS OF MATERIAL FACTS

It is undisputed that in October of 2006, while employed as the Chief of Police of the Village of Columbus, New Mexico, Plaintiff sought and obtained a bid from D&M for the purchase of six XD40 handguns for the Village of Columbus Police Department. (Doc. 134, Statement of Material Facts ("MF") No. 1 at pp. 4-5).[1] The bid sheet issued by D&M on October 26, 2006 specified that the Village of Columbus Police Department could purchase six

---

[1] Mr. Armijo does not dispute Material Fact Nos. 1-7 and 9 set forth in D&M Statement of Material Facts. Accordingly, these facts are deemed admitted. D.N.M.LR-Civ. 56.1(b).

XD40 handguns from D&M at a total cost of $3,144.00—equal to $524.00 per gun. (*Id.*, MF No. 2 at p. 5). Pursuant to that bid sheet, Plaintiff drafted and signed a letter on October 31, 2006, on Village of Columbus letterhead, accepting the bid issued by D&M on October 26, 2006. (*Id.*, MF No. 3 at p. 5). Plaintiff's October 31, 2006 letter to D&M stated that all six guns would be used for the Village of Columbus Police Department, and it provided D&M with a purchase order number, as required by D&M's bid. (*Id.*, MF No. 4 at p. 5).

Further, it is undisputed that pursuant to Plaintiff's letter of October 31, 2006, Shaun Reynolds, the owner of D&M, ordered six XD40 handguns for the Village of Columbus, and he received them on November 17, 2006. (*Id.*, MF No. 5 at p. 5). Upon receiving the six guns, Mr. Reynolds created a receipt, specifying that the six guns were for the Village of Columbus, listing the serial numbers of all six guns, and stating that the total cost of the six guns was $3,144.00, or $524.00 per gun. (*Id.*, MF No. 6 at p. 5). On November 21, 2006, Plaintiff picked up the six guns from D&M and signed the receipt indicating that all six guns were for the Village of Columbus and that each gun cost $524.00. (*Id.*, MF No. 7 at p. 5).

There is also no dispute that on November 22, 2006, the Village of Columbus issued a check to D&M for $2,360.00. (*Id.*, MF No. 8 at p. 6; Doc. 88, Ex. 13 to Ex. A; Doc. 134, Ex. B-1; Doc. 88, Ex. B at 36:7-37:9; Doc. 99 at p. 3).[2] Further, Plaintiff does not dispute that

---

[2] Plaintiff does not dispute that the Village of Columbus issued a check to D&M for $2,360.00 (an amount that was less than the amount due for all six guns but greater than the amount due for four guns, assuming each was $524.00), but instead argues only that certain notations on the check stub referencing the bid sheet and a purchase order number are not relevant to the issues before the Court and that what is relevant from these documents is that they prove the Village of Columbus only paid for four handguns. (Doc. 99 at p. 3). In support of his argument that the documents prove the Village of Columbus paid for only four of the firearms, Plaintiff cites a Village of Columbus Purchase Order that references the check number and indicates that the check for $2,3600.00 was for eight magazines at a price of $18.00 each and four guns at a price of $554.00 each. (*Id.*; Doc. 88, Ex. 13 to Ex. A; Doc.134, Ex. B-1).

when Mr. Reynolds opened the envelope containing the check and realized it was for the incorrect amount, he contacted Tracy Bolduc, an officer with the Village of Columbus Police Department, and that Ms. Bolduc assured Mr. Reynolds that he would receive the remainder of the payment for the six guns. (Doc. 134, MF No. 9 at p. 6).

On December 12, 2006, D&M received $784.00 in cash (an amount that is equivalent to the difference between the original $3,144.00 bid and the $2,360.00 November 22, 2006 check) and issued an unsigned receipt for $784.00, which stated: "Pay off of Balance for xd's." (Doc. 88, Ex. A at 279:5-14, 336:20-337:25; *Id.*, Ex. 10 to Ex. A; *Id.*, Ex. B at 41:10-42:23; Doc. 134, Ex. B-1). Mr. Armijo has submitted evidence, which this Court assumes is true for purposes of this summary judgment motion, that the $784.00 came from him personally, rather than from the Village of Columbus. (Doc. 99, Ex. 1 at 280:10-12). Mr. Armijo explained in his deposition that though the Village of Columbus Police Department originally intended to purchase all six firearms, sometime after the bid had been accepted and the firearms had been ordered and were on-hand, Mr. Armijo was informed by the Mayor that the Police Department could only purchase four weapons. Accordingly, Mr. Armijo decided that he would personally purchase the other two guns and he personally gave Ms. Bolduc the $784.00 from his paycheck to pay for two of the weapons. (*Id.*, Ex. 1 at 268:10-275:16, 279:1-14, 280:6-12).

Prior to December 12, 2006, the Village of Columbus had made cash purchases from

---

Plaintiff, however, has submitted no evidence that Mr. Reynolds saw this purchase order prior to Mr. Armijo filing the instant lawsuit and Mr. Reynolds, himself, testified that he had not seen the purchase order until the night before his deposition in this matter. (Doc. 88, Ex. B at 24:19-26:5). Likewise, neither party has submitted evidence suggesting that D&M had seen the notations on the check stub (as opposed to the check itself) prior to the instant litigation. Accordingly, neither the notations on the check stub nor the purchase order aid the Court in assessing what D&M knew at the time it allegedly conspired with law enforcement officers.

D&M for items such as ammunition and holsters; however, prior to December 12, 2006, neither the Village of Columbus nor any other law enforcement agency had ever purchased a firearm from D&M using cash.  (Doc. 88, Ex. A at 283:8-285:23, 288:13-289:11, 344:15-345:10; *Id.*, Ex. B at 13:13-14:13).

On or about January 26, 2007, Mr. Reynolds created a type-written "List of Items Purchased" by "Columbus Police Chief Paul Armijo on behalf of the Columbus Police Department," which was addressed to the Columbus Police Department and listed the serial numbers of all six firearms, a purchase price of $524.00 for each gun, a total price of $3,144.00, and included the notation that "[t]he above noted firearms were received on November 17, 2006 by Columbus Police Chief Paul Armijo."  (*Id.*, Ex. 6 to Ex. A; Doc. 134, Ex. G ¶ 7).  This list was provided to law enforcement officers, including Armando Perales, the investigating BOTF officer.[3]  (Doc. 88, Ex. B at 43:4-46:11; *Id.*, Ex. D at 89:23-90:9, 102:15-111:4; Doc. 134, Ex. G ¶ 12).  The list does not differ in material respects from the November 17, 2006 receipt signed by

---

[3] This Court acknowledges that there is some inconsistency in the evidence surrounding the creation of this January 26, 2007 list.  On the one hand, there is testimony from Mr. Reynolds that he was contacted by Ms. Bolduc and asked to provide a list of the serial numbers for the handguns purchased and that he created the typewritten list because Ms. Bolduc could not read the handwritten receipt.  (Doc. 88, Ex. B at 43:4-46:11; Doc. 134, Ex. G ¶ 7).  On the other hand, there is testimony from Ms. Bolduc that she had not seen the January 26, 2007 list prior to being deposed in this case.  (Doc. 99, Ex. 2 at 37:3-7).  Additionally, Mr. Perales, from the Border Operations Task Force, speculated during his deposition that though he could not recall clearly, he may have asked Mr. Reynolds to created the typewritten list.  (Doc. 88, Ex. D at 89:23-90:9, 102:15-111:4).  Plaintiff also questions the necessity of the January 26, 2007 list in light of the November 17, 2006 receipt created by D&M and signed by Mr. Armijo (which Plaintiff maintains is legible and which lists the serial numbers for all six firearms), as well as the modified bid sheet that was created by Mr. Armijo from D&M's October 26, 2010 bid sheet using white out (which lists the serial numbers for four of the firearms and was in the possession of the Village of Columbus, though it was never shown to D&M).  (Doc. 99, Exs. 3 & 4; Doc. 88, Ex. A at 300:9-308:11, 327:20-330:20, 334:18-336:19; *Id.*, Exs. 11&12 to Ex. A).  None of these alleged inconsistencies, however, creates a genuine issue of material fact for purposes of the present motion.

Plaintiff; though, as noted above, it is Plaintiff's contention that the circumstances of the purchase changed between November 17 and January 26 in that as of November 17, it was the intent that the Village of Columbus Police Department would purchase all six weapons whereas shortly thereafter it was decided that the Police Department would purchase only four weapons and that Plaintiff would personally purchase the remaining two weapons.  (*Compare* Doc. 88, Ex. 6 to Ex. A *with Id.*, Ex. 9 to Ex. A).  Additionally, Mr. Perales testified at his deposition that he believes that Mr. Reynolds indicated to him that D&M had sold the Village of Columbus six .40-caliber Springfield Armory firearms.  (Doc. 99, Ex. 5 at 89:16-19).

It is Plaintiff's contention that Mr. Reynolds conspired with law enforcement officers by knowingly providing false information to law enforcement officers (including the "fabricated" January 26, 2007 list) indicating that the Village of Columbus had purchased six weapons when D&M knew that Mr. Armijo had purchased two of the weapons personally.  Mr. Reynolds, however, maintains that he had no knowledge that Mr. Armijo intended to purchase two of the guns for his personal use at the time he created the January 26, 2007 list.

In support of Plaintiff's proposition that Mr. Reynolds was aware that he was purchasing the two guns for his personal use, Mr. Armijo cites various excerpts from his own deposition. (Doc. 99 at pp. 4 & 6 (citing *Id.*, Ex. 1 at 248:3-7, 268:10-18, 269:1-3; 269:17-25; 272:10-14; 279:1-4, 279:11-14: 280:10-12)).  In the cited depositions excerpts, Mr. Armijo testifies that Ms. Bolduc was in charge of ordering firearms; that at some point after the firearms were ordered and on-hand, he was informed that the Police Department would only be allowed to purchase four of the guns; that after learning this, he contacted Ms. Bolduc and told her that he would personally be purchasing the other two guns; that he further asked Ms. Bolduc to contact Shaun Reynolds

7

from D&M to confirm that there would be no problem with this arrangement and to request that Mr. Reynolds contact him should there be a problem; that while he was not present for any conversation between Ms. Bolduc and Mr. Reynolds, he was told by Ms. Bolduc that she had told Mr. Reynolds that he was going to be buying two of the guns and that there was no problem with the arrangement; and that he personally gave Ms. Bolduc the $784.00 from his paycheck. (*Id.*, Ex. 1 at 248:3-7, 268:10-270:11, 272:5-275:16, 279:1-14, 280:6-12). The problem with this testimony, as Mr. Armijo himself repeatedly acknowledges, is that Mr. Armijo was not privy to the conversations between Mr. Reynolds and Ms. Bolduc and Mr. Armijo never personally told Mr. Reynolds that he would be purchasing two of the handguns. (*Id.*, Ex. 1 at 268:10-270:11, 272:5-276:21). While this testimony, taken in the light most favorable to Plaintiff, may suffice to show that the $784.00 came from Plaintiff (rather than the Village of Columbus) and that Plaintiff requested, and believed, that Ms. Bolduc had told Mr. Reynolds that Plaintiff was purchasing two of the six guns, it falls short of creating a material issue of fact as to whether Mr. Reynolds was aware that the $784.00 came from Plaintiff personally and whether he was aware that Plaintiff was personally purchasing two of the six weapons. As noted above, Mr. Armijo lacks personal knowledge of the alleged conversations between Ms. Bolduc and Mr. Reynolds. By contrast, D&M cites excerpts from Mr. Reynolds deposition, as well as his affidavit, in which he avers that he was unaware of Plaintiff's alleged intent to purchase two of the firearms for his personal use. (Doc. 88, Ex. B at 27:1-25, 34:4-19, 42:6-19; Doc. 134, Ex. G ¶ 8). Likewise, Ms. Bolduc testified that she never told Mr. Reynolds that Plaintiff intended to purchase two of the six firearms for his personal use. (Doc. 88, Ex. C at 61:14-62:4).

It is further undisputed that Plaintiff did not complete a federal Alcohol, Tobacco, and Firearms Form 4473 for the two guns he allegedly purchased personally, despite the fact that he had filled out such forms for other personal gun purchases. (*Id.*, Ex. A at 137:25-140:5, 265:2-269:16, 273:18-22; *Id.*, Ex. 1 to Ex. A; Doc. 134, Ex. G ¶ 8). While Plaintiff does not dispute this fact, he contends that it is not material because Ms. Bolduc was in charge of the paperwork. (Doc. 99, Ex. 1 at 248:3-7).

In support of its revised motion for summary judgment, D&M has also submitted an affidavit from Mr. Reynolds, the owner and sole employee of D&M. (Doc. 134, Ex. G ¶ 2). In his affidavit, Mr. Reynolds avers *inter alia* that no law enforcement officer or agency asked him to lie regarding the list of items purchased; that at the time he created the list, he believed it to be a truthful and accurate representation of the transaction at issue; that the only action taken by D&M in relation to the allegation in Plaintiff's lawsuit was to provide what Mr. Reynolds believed was truthful documentation to the Village of Columbus and Border Operations Task Force; and that Mr. Reynolds did not report Plaintiff to any law enforcement authorities, nor was he consulted regarding whether law enforcement authorities should investigate and/or prosecute Plaintiff. (*Id.*, Ex. G ¶¶ 1-16).[4] While Mr. Reynolds also avers that he was never interviewed by

---

[4] In his affidavit, Mr. Reynolds also avers that he created the January 26, 2007 list of firearms purchased at the request of Village of Columbus and that at the time that he provided the documentation to the Village of Columbus—on or about January 26, 2007—he did not know of any investigation or proposed prosecution of Plaintiff, but rather considered the request simply to be a customer request. (Doc. 134, Ex. G ¶¶ 7, 9 & 16). As noted in footnote 3, there is inconsistency surrounding the creation of the January 26, 2007 list—some evidence suggests that it was created at the request of Ms. Bolduc, while other evidence suggests that it was created at the request of the Border Operations Task Force. Assuming the list was created at the request of Ms. Bolduc, it may have been reasonable for Mr. Reynolds to view it simply as a customer request. However, to the extent the list was created at the request of the Border Operations Task Force, it could not be viewed as a customer request. Rather, the very fact that a separate law enforcement agency is requesting such information would itself tend to raise red flags from

any law enforcement authority (*Id.*, Ex. G ¶ 12), there is testimony from Mr. Perales indicating that Mr. Reynolds did speak with investigators prior to execution of the search warrant and, as noted above, may have indicated that D&M had sold the Village of Columbus six firearms. (Doc. 140, Ex. 1 at 84:22-25, 89:16-19). Based on Mr. Perales's deposition testimony, however, the scope of the conversations were limited and Mr. Perales denies having asked for Mr. Reynolds assistance (other than to provide documentation) in prosecuting Plaintiff and likewise denies having requested that Mr. Reynolds lie or alter documents. (Doc. 88, Ex. D at 102:15-110:24).

Finally, Plaintiff submits testimony from Mr. Perales indicating that the evidence that Mr. Perales had in his possession that the Village of Columbus had purchased more than four handguns was the January 26, 2007 list D&M had created. (Doc. 99, Ex. 5 at 87:1-19).[5]

---

which one could infer some sort of investigation was ongoing. Nonetheless, the Court finds that this discrepancy fails to create a genuine issue of material fact because even assuming that Mr. Reynolds was aware that Plaintiff was being investigated at the time he created the list, there is insufficient evidence to support Plaintiff's claim that D&M conspired with law enforcement agents.

This Court further rejects Plaintiff's argument that Mr. Reynold's affidavit should be striken as a bad faith affidavit under Federal Rule of Civil Procedure 56(g) (now Rule 56(h)). While this Court acknowledges that, in its revised motion, D&M modified Material Fact No. 12 to specify that the January 26, 2007 list was created at the request of Ms. Bolduc, as opposed to "law enforcement," there is no change in the cited testimony (apart from the addition of Mr. Reynold's affidavit to the list of cited testimony). Further, there is no inconsistency between the cited portions of Mr. Reynold's deposition and his affidavit that would indicate bad faith or justify striking the affidavit. (*Compare* Doc. 88, Ex. B at 43:4-46:11 *with* Doc. 134, Ex. G ¶¶ 7 & 9).

[5] In addition to the evidence discussed above, Plaintiff's "Statement of Supplemental Undisputed Material Facts" also contains certain additional facts that are not material to the present motion. (Doc. 99 at pp. 7-8).

## D&M'S REQUEST FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

D&M seeks entry of summary judgment in its favor on Count V of Plaintiff's Complaint, which alleges that D&M conspired with public defendants to violate Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983 (Doc. 1 ¶¶ 44, 115-22), on the basis that it did not act under color of law. As D&M is a private entity, to prevail on his Section 1983 claim against D&M, Plaintiff must prove that D&M's alleged actions were "state actions" or taken "under color of law." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (recognizing that under Section 1983, liability attaches only to conduct occurring "under color of law" and thus the only proper defendants in a Section 1983 claim are those who represent the state in some capacity).

The Supreme Court of the United States has set forth a two-part test for the existence of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "The [Supreme] Court has taken a

flexible approach to the state action doctrine, applying a variety of tests to the facts of each case." *Gallagher*, 49 F.3d at 1447. Those tests include the nexus test, the symbiotic relationship test, the joint action test, and the public function test. *Id.* at 1447-57. Plaintiff argues that the relevant test to his claims is the joint action test. Under the joint action test, state action is present "if a private party is a willful participant in joint action with the State or its agents." *Id.* at 1453 (internal quotations omitted).

D&M contends that its furnishing of information requested by law enforcement officers does not constitute joint action that would render D&M liable under Section 1983.

> To prove a conspiracy between private parties and the state under Section 1983, the plaintiff must show a joint participation, agreement, or meeting of the minds to violate constitutional rights. And, there must be sufficient evidence of a conspiracy to prevent the jury from engag[ing] in sheer speculation and conjecture.

*Aly v. Rocky Mountain Holding, L.L.C.*, No. 98-2273, 2000 WL 18878, at *4 (10th Cir. Jan. 12, 2000) (unpublished) (internal quotations and citations omitted). "The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985." *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *see also Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) ("[P]roviding false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983."); *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) ("The mere acquiescence of the bank employees to the investigation request of the FBI to view Fonda's bank records is, without more, insufficient to prove a conspiracy.").

While the mere furnishing of information, by itself, does not constitute joint action, courts also look at whether the facts indicate that the judgment of a private party was substituted for that of the police or if the circumstances allowed a private party to exercise state power. *See*

*Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987). The Tenth Circuit has held that citizens who made complaints to police officers that resulted in arrests were not state actors where the Tenth Circuit found nothing in the record from which it "could infer that the allegedly unconstitutional arrests resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power." *Gallagher*, 49 F.3d at 1454 (citing *Carey*, 823 F.2d 1402 and *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987) and noting that in both *Carey* and *Lee*, "the record indicated that the police officers had made an independent decision to make the challenged arrest"). By contrast, in another case, the Tenth Circuit concluded that a store security guard who reported a suspected shoplifter to the police was a state actor where "the officer that made the arrest did not make an independent investigation but relied on the judgment of the security guard." *Gallagher*, 49 F.3d at 1454 (*citing Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1429 (10th Cir. 1984)). Other circuits have also evaluated a private party's liability under Section 1983 by examining, among other things, whether law enforcement authorities relied exclusively on a private party's judgment to search or arrest a person rather than making an independent investigation and decision to arrest the person. *See Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984) (holding that even though the shopkeeper asked the police to search the suspect, the decision to search was the decision of the police, and that the shopkeeper did not act under the color of law); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 326-27 (7th Cir. 1978) (no joint action where defendant supplied information to police officers who then acted on their own initiative in arresting plaintiff); *Smith v. Brookshire Bros., Inc.*, 519 F.2d 93, 94-95 (5th Cir. 1975) (store employees may be considered to be acting jointly with police when the police, pursuant to a preconceived plan, would arrest

13

accused shoplifters without any independent investigation).

In this case, Plaintiff's conspiracy claim rests on Plaintiff's contention that D&M provided false information to investigators, namely the allegedly fabricated January 26, 2007 list of items purchased indicating that the Village of Columbus had purchased six handguns when, in fact, D&M was aware that the transaction had changed and that Plaintiff had personally purchased two of the handguns.  As noted above, however, there is no competent evidence that D&M was ever informed that the transaction had changed.  Plaintiff admits that he never personally informed D&M of the change.  Mr. Reynolds has repeatedly testified that he was not informed of the alleged change in the transaction.  And Ms. Bolduc likewise testifies that she never informed Mr. Reynolds that Plaintiff would personally be purchasing two of the firearms.  The only evidence that Plaintiff cites to support his proposition that D&M was aware that Plaintiff personally purchased two of the weapons was (1) the fact that the second payment of $784.00 was paid in cash and no law enforcement agency had previously purchased weapons with cash and (2) Mr. Armijo's own testimony that he asked Ms. Bolduc to inform Mr. Reynolds that he would personally be purchasing two of the weapons and that Ms. Bolduc subsequently informed him that she had spoken to Mr. Reynolds regarding the change.  This evidence, however, fails to create a genuine issue of material fact.  As noted above, Mr. Armijo acknowledges that he was not privy to any alleged conversation between Ms. Bolduc and Mr. Reynolds and is therefore not competent to testify as to what was said during such alleged conversations.  While the evidence may suffice to establish that Mr. Armijo asked and reasonably believed that Ms. Bolduc spoke to Mr. Reynolds, it is insufficient to establish D&M's knowledge that Plaintiff intended to personally purchase two of the firearms.  Likewise, while the cash nature of the transaction may have been unusual, this Court finds that it fails to raise a

genuine issue of material fact, particularly in view of the fact that the Village of Columbus had previously purchased other items (though not weapons) from D&M using cash and that the payment was equal to the amount still due under the original bid but less than the purchase price for two handguns (assuming each gun was $524.00).

  Moreover, even assuming that D&M had notice that the transaction had changed and that Plaintiff had personally purchased two of the weapons and created a misleading or deceptive document, this Court would still find that Plaintiff has presented insufficient evidence to establish a joint participation, agreement, or meeting of the minds between D&M and law enforcement officers. This is not a case where D&M initiated an investigation or reported what it perceived as misconduct. Rather, the evidence submitted, and not disputed, indicates that D&M's involvement was limited to responding to requests for information and that its contact with law enforcement officers was relatively limited. While one could infer that D&M, upon being contacted by officers from the Border Operations Task Force, may have suspected an investigation was ongoing, there is no evidence that D&M was consulted or participated in the investigation apart from providing the requested information, no evidence that D&M's judgment was substituted for that of law enforcement officers, no evidence that law enforcement officers asked Mr. Reynolds to lie or alter documents, and no evidence that D&M and law enforcement officers had reached an agreement to deprive Plaintiff of his constitutional rights. In order to survive a motion for summary judgment on a claim of conspiracy under Section 1983, "there must be sufficient evidence of a conspiracy to prevent the jury from 'engag[ing] in sheer speculation and conjecture.'" *Aly*, 2000 WL 18878, at \*4 (quoting *Six v. Henry*, 42 F.3d 582, 585 (10th Cir. 1994)). Based on the summary judgment record, there is no evidence that D&M acted in concert with law enforcement officer or conspired with law enforcement apart from Plaintiff's

sheer speculation and conjecture.  Accordingly, this Court finds that D&M is entitled to summary judgment in its favor as to Count V of Plaintiff's Complaint.

## D&M'S REQUEST FOR ATTORNEYS' FEES

D&M also requests that the Court award it its attorneys' fees incurred in defending against Plaintiff's claims pursuant to 42 U.S.C. § 1988(b).  Section 1988(b) provides that a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  Stringent standards must be met before a court may award attorneys fees to a prevailing defendant pursuant to 42 U.S.C. § 1988.  A court may award attorneys fees to a prevailing defendant in a Section 1983 action only upon finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995) (internal quotations omitted).

At this point, the Court will deny D&M's request for attorneys' fees without prejudice. Whether Plaintiff's action was frivolous, unreasonable, or without foundation when brought turns, in part, on credibility determinations.  As noted above, Mr. Armijo testified at his deposition that he informed Ms. Bolduc of his intent to personally purchase two of the handguns and requested that she speak to Mr. Reynolds regarding his decision to personally purchase two of the six handguns.  Mr. Armijo further testified that Ms. Bolduc indicated to him that she indeed had spoken to Mr. Reynolds regarding his decision to purchase two of the six firearms. To the extent Mr. Armijo's testimony is credible, there would appear to be at least some basis for his belief that D&M may have conspired with law enforcement officers by providing deceptive information.  On the other hand, if Mr. Armijo's testimony is not credible and, as D&M asserts, he knew from the inception of this suit that his alleged intention to purchase two of the six handguns was never disclosed to D&M, there would appear to be little, if any, basis for his claim

16

against D&M. Moreover, as D&M has a pending counterclaim for malicious abuse of process, which raises related issues and also seeks attorneys' fees, the Court finds that the issue of whether fees are appropriate pursuant to 42 U.S.C. § 1988(b) is best resolved at a later point when the record is more fully developed and this Court is in a better position to assess Mr. Armijo's credibility.

Additionally, D&M requests that the Court hold Plaintiffs' attorney jointly and severally liable for D&M's attorneys' fees pursuant to 28 U.S.C. § 1927, which provides: "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions may be awarded pursuant to Section 1927 "when an attorney acts recklessly or with indifference to the law" or "when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005).

D&M has not specified the amount of attorneys' fees it seeks, nor has it tied the fees it seeks to any particular phase of the litigation. Instead, it appears that D&M is seeking recovery of all fees it incurred. In requesting fees pursuant to Section 1927, D&M argues that Plaintiffs' attorney has known since very early in the litigation—if not before the litigation commenced —that Plaintiffs' claim of conspiracy was baseless. D&M contends that its counsel met with Plaintiffs' attorney in December 2008 (just months after this suit was filed) to review documents, including D&M's October 26, 2006 bid sheet to the Columbus Police Department for six firearms, Plaintiff's October 31, 2006 letter in which he ordered the guns and indicated that they

17

would be used for the Village of Columbus Police Department, the November 17, 2006 receipt signed by Plaintiff indicating his receipt of six handguns on behalf of the Village of Columbus, and the December 12, 2006 receipt issued to the Village of Columbus stating that the balance had been paid off. (Doc. 88, Exs. 7, 9 &10-11 to Ex. A). As noted above, however, Mr. Armijo testified in his deposition that the transaction changed after November 17, 2006 in that he was informed that the Police Department would only be allowed to purchase four of the handguns and decided that he would personally purchase the remaining two handguns and that he thereafter contacted Ms. Bolduc and requested that she tell Mr. Reynolds about this change and had reason to believe that she did, in fact, tell Mr. Reynolds about the change. In light of the conflicting version of events, this Court declines to rule on the present record that Plaintiffs' counsel acted unreasonably and vexatiously in failing to dismiss the claims in December 2008.

  D&M's brief also notes several examples of troubling conduct on the part of Plaintiffs' counsel, including counsel's failure to timely respond to D&M's counterclaim for malicious prosecution, which was filed February 9, 2009; counsel's apparent failure to even inform his client that a counterclaim had been filed despite the fact that counsel had been on notice of the counterclaim for months (Mr. Armijo testified in late July 2009 that he was unaware of the counterclaim (*Id.*, Ex. A at 251:1-13)); and counsel's apparent willingness to negotiate on his clients behalf without consulting his client (*Id.*, Ex. A at 261:9-264:22). While this Court is deeply troubled by Plaintiff's counsel apparent failure to keep his client appraised of this litigation, D&M has not set forth how these alleged failures of Plaintiffs' counsel have multiplied the proceedings unreasonably and vexatiously or what specific fees it is contending it incurred as a result of these actions.

This Court therefore denies D&M's present broad request for its attorneys' fees pursuant to 28 U.S.C. § 1927. However, this denial is without prejudice to D&M bringing a narrower motion, if appropriate, that specifies what fees are being sought and why it contends the specific fees being sought are the result of conduct that is sanctionable pursuant to Section 1927.

**IT IS SO ORDERED.**

Dated this 7th day of February, 2011.

_____
**MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff:*

Michael E. Mozes
5732 Osuna Rd. NE
Albuquerque , NM 87109

*Attorneys for Defendants Village of Columbus, Espinoza, Bolduc, B. Gutierrez, R. Gutierrez, Houltin, Rosenberg, City of Deming Police Department and Sera:*

Gianna M. Mendoza
James P. Sullivan
128 East DeVargas
Santa Fe , NM 87501

*Attorneys for Defendants Perales, Sixth Judicial District Attorney's Office, Flores, Jimenez, Chavez, and Border Operations Task Force:*

Cody R. Rogers
Thomas A. Sandenaw, Jr.
2951Roadrunner Pkwy
Las Cruces , NM 88011

*Attorneys for Defendant D & M Sporting Goods :*

Bryan J. Davis
Davis & Gilchrist, P.C.
124 Wellesley SE
Albuquerque, New Mexico 87106