**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

PAUL ARMIJO,

        Plaintiff,

v.                                                                                        Civ. No. 08cv935 MV/WPL

VILLAGE OF COLUMBUS,
EDDIE ESPINOZA, in his individual capacity,
ARMANDO PERALES, in his individual capacity,
TRACY BOLDUC, in her individual capacity,
BLAS GUTIERREZ, in his individual capacity,
ROBERTO GUTIERREZ, in his individual capacity,
BRIAN HOULTIN, in his individual capacity,
ALLEN ROSENBERG, in his individual capacity,
LUNA COUNTY SHERIFF'S OFFICE,
SIXTH JUDICIAL DISTRICT ATTORNEY'S OFFICE,
CITY OF DEMING POLICE DEPARTMENT,
ADRIAN FLORES, in his individual capacity,
ERNIE SERA, in his individual capacity,
MIRABEL JIMENEZ, in his individual capacity,
ARNOLD CHAVEZ, in his individual capacity,
BORDER OPERATIONS TASK FORCE, and
D & M SPORTING GOODS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Columbus Defendants' Motion for Partial Summary Judgement Based on Qualified Immunity and Other Grounds, filed August 12, 2010. (Doc. 127). As set forth below, this Court will **GRANT** the Columbus Defendants' motion.

**FACTUAL BACKGROUND**

Among other things, this case arises out of Plaintiff Paul Armijo's alleged wrongful termination from his employment as Chief of Police for the Village of Columbus.

The following facts, taken from Plaintiff's complaint, are undisputed for purposes of this

motion: Plaintiff was hired as Chief of Police by Mayor Eddie Espinoza in March of 2006. (Motion ¶ 1 at p. 4; Complaint (Doc. 1) ¶ 23). Plaintiff was suspended from his position of Chief of Police on January 24, 2007. (Motion ¶ 3 at p. 4; Complaint ¶¶ 28-30). After Plaintiff was suspended from his position, he returned to his office at the police department and began to gather his belongings in a box. (Motion ¶ 4 at p. 4; Complaint ¶¶ 33-34). Defendant Espinoza arrived at Plaintiff's office and attempted to prevent Plaintiff from removing any object from the office. (Motion ¶ 5 at p. 5; Complaint ¶ 34). Defendant Espinoza kicked the box from Plaintiff's hand. (Motion ¶ 6 at p. 5; Complaint ¶ 34). Mayor Espinoza subsequently recommended Plaintiff's termination to the Board of Trustees for the Village of Columbus (the "Board"). (Motion ¶ 7 at p. 5; Complaint ¶ 57). In February of 2007, the Board voted to terminate Plaintiff from the position of Police Chief. (Motion ¶ 8 at p. 5; Complaint ¶ 57).

In addition, it is undisputed that the Members of the Board that voted to terminate Plaintiff in February of 2007 were Defendants Blas Gutierrez, Roberto Gutierrez, Brian Houltin and Allen Rosenberg and that Plaintiff was not provided with a pre- or post-termination hearing with regard to his termination. (Motion ¶¶ 9-10 at p. 5 & Ex. A at ¶¶ 4-6). Defendants Ernie Sera and Tracy Bolduc were officers employed by the Village of Columbus in February of 2007 and were not members of the Board that voted to terminate Plaintiff. (Motion ¶ 11 at p. 5 & Ex. A at ¶ 7).

By the instant motion, Defendants Village of Columbus, Eddie Espinoza, Tracy Bolduc, Blas Gutierrez, Robert Gutierrez, Brian Houltin and Allen Rosenberg seek summary judgment on the following eight claims related to Plaintiff's termination from the position of Chief of Police for the Village of Columbus: Counts I and X are procedural and substantive due process claims seeking relief pursuant to 42 U.S.C. § 1983; Counts XII-XV and XVII are state law tort claims for breach of implied contract, breach of implied covenant of good faith and fair dealing, prima facie tort,

retaliatory discharge, and battery; and Count XIX is a claim for violation of the Peace Officer's Employer-Employee Relations Act, NMSA § 29-14-1, *et seq.* As Plaintiff does not dispute that Tracy Bolduc is entitled to summary judgment as to these eight claims, the Court will not address Ms. Bolduc further in this opinion.[1] (Doc. 128 at p. 4). Accordingly, for purposes of this motion, when the Court hereinafter refers to the Defendants or the Columbus Defendants, it is referring collectively to the Village of Columbus, Eddie Espinoza, Blas Gutierrez, Robert Gutierrez, Brian Houltin and Allen Rosenberg.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## I.   Counts I and X: Plaintiff's Procedural and Substantive Due Process Claims

The Fourteenth Amendment proscribes a state from, among other things, depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Here, Mr. Armijo's due process claims are based on an alleged property interest in his employment.

---

[1] The Court notes that although Defendant Ernie Sera is not listed as one of the individuals on whose behalf the instant motion is being brought, the motion argues that the above-listed claims fail as to Mr. Sera because he, like Ms. Bolduc, was not a member of the Board that voted to terminated Plaintiff. Plaintiff, in turn, "agrees" that Mr. Sera "should be granted summary judgment" with respect to the above-listed claims. (Doc. 128 at p. 4). In light of the ambiguity in the scope of the present motion and the apparent agreement of the parties, rather than address the claims against Mr . Sera in this instant opinion, the Court requests that the parties prepare a Stipulation of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) that dismisses any of the aforementioned claims against Mr. Sera that Plaintiff does not intend to pursue.

Accordingly, to prevail on either his procedural or substantive due process claim, Mr. Armijo must first establish that he had a protected property right in his employment. *Potts v. Davis Cnty.*, 551 F.3d 1188, 1192 (10th 2009) ("A plaintiff cannot allege a violation of either procedural or substantive due process if he does not first show that he had a protected property right.").

In order to establish a property interest in his employment, Mr. Armijo must establish "'more than a unilateral expectation of it,'" rather he must establish that he has "'a legitimate claim of entitlement'" to continued employment. *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1163 (10th Cir. 2007) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)); *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). While the Due Process Clause is a source of protection for property, it is not a source of property rights. Rather, "[c]ourts must look to 'existing rules or understandings that stem from an independent source such as state law' to define the dimensions of protected property interests." *Setliff v. Mem'l Hosp. of Sheridan Cnty.*, 850 F.2d 1384, 1395 (10th Cir. 1988) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (internal quotations omitted)).

Applying the above standards and as set forth more fully below, this Court finds that Defendants are entitled to summary judgment as to Plaintiff's due process claims as Mr. Armijo did not have a property interest in his employment at the time he was terminated.

Under New Mexico law, appointed public officers do not have a property interest in their employment. In *Webb v. Village of Ruidoso Downs*, 117 N.M. 253, 871 P.2d 17 (N.M. Ct. App. 1994), the plaintiff, a former clerk-treasurer of the Village of Ruidoso Downs, argued that she was wrongfully terminated by the Village as the Village had failed to comply with its merit system

4

ordinance in terminating her. While the District Court ruled in the plaintiff's favor, the New Mexico Court of Appeals reversed. Though the New Mexico Court of Appeals assumed, without deciding, that the merit system ordinance by its terms covered the plaintiff (and there was no dispute that the Village had failed to comply with the ordinance in terminating the plaintiff), it nonetheless found that reversal was required as "the New Mexico statute authorizing municipalities to enact merit system ordinances for municipal employees does not authorize such ordinances to cover municipal officers." *Id.* at 254-56, 871 P.2d at 18-20 (explaining NMSA 1978, § 3-13-4 "authorizes only merit system ordinances that apply to employees" and that "[m]unicipalities have no authority to protect appointed public officers through such ordinances"). While the Court in *Webb* recognized that it is often difficult to determine whether a particular position is an appointed office, the Court had no difficulty in determining that a municipal clerk-treasurer is an appointed office as NMSA 1978, section 3-12-4, which is entitled "Governing body to provide for creation of certain appointive offices," explicitly provides that "[t]he governing body of each municipality shall provide for the office of clerk, treasurer and police officer." *Id.* at 256, 871 P.2d at 20; NMSA 1978, § 3-12-4(A). Accordingly, the Court in *Webb* concluded that this statute "expresses a legislative determination that the position of municipal clerk-treasurer is an office." *Webb*, 117 N.M. at 256, 871 P.2d at 20.

This Court similarly finds that the position occupied by Mr. Armijo—Chief of Police—is an appointed public office pursuant to NMSA 1978, section 3-12-4(A). In so holding, this Court notes that in *Maez v. Coppler & Aragon, P.C.*, No. 97-2378, 1999 WL 176129 (10th Cir. Mar. 31, 1999) (unpublished), the Tenth Circuit faced the question of whether the Village Marshal/Chief of Police of the Village of Chama, New Mexico was an appointed official under New Mexico law. In that case, the plaintiff, Mr. Maez, argued that his procedural due process rights were violated by the Village of Chama when it terminated him from his position as Police Marshal of the Village of

5

Chama. *Id.* at *1. The District Court granted summary judgment in favor of the defendants as it found that Mr. Maez was an appointed official under NMSA 1978, section 3-12-4 and that, as an appointed official, he had no property interest in his employment and the Tenth Circuit affirmed. *Id.* at *1-4. Among other things, in finding that Mr. Maez was an appointed official with no property interest in his position, the Tenth Circuit noted that Mr. Maez had held himself out as the Village Marshal or Chief of Police, had signed records as Marshal/Chief of Police, and had worn a badge identifying himself as Chief of Police; that the Mayor had testified that he reappointed Mr. Maez as the Village Marshal; and that Mr. Maez had failed to designate specific facts that could lead a rational trier of facts to find he was a non-appointed employee. *Id.* at *2.

Here, Mr. Armijo does not dispute that prior to his termination, he served as Police Chief for the Village of Columbus. Moreover, the documentary record demonstrates that Mr. Armijo was appointed to the position of Police Chief. The Minutes from a Village of Columbus Special Council Meeting, which occurred on March 21, 2006, reflect Mr. Armijo's appointment as Police Chief and further confirm that the position is an at-will position. (Doc. 127, Ex. A & Ex. 1 to Ex. A). Specifically, the relevant portions of the Minutes provide under the heading "APPOINTMENT OF AT-WILL EMPLOYEES–":

> b. **Police Chief-Mayor Espinoza submits Paul Armijo for Police Chief. Motion to approve Paul Armijo as Police Chief, by Trustee Roberto Gutierrez, second by Trustee Blas Gutierrez, call for roll call vote, Trustee Blas Gutierrez aye, Roberto Gutierrez aye, Trustee Brain Houltin aye, Trustee Allen Rosenberg abstained. Motion carried.** Mayor Espinoza asked Chief Armijo to come forward and notified him that he will be expected to change the image of the Police Department and that he will also be an at will employee. . . .

(*Id.*, Ex. 1 to Ex. A). Accordingly, this Court concludes that like Mr. Maez, Mr. Armijo was an appointed public official pursuant to NMSA 1978, section 3-12-4(A) and thus lacked a property

interest in his position.[2]

While Mr. Armijo cites numerous facts that he contends create a genuine dispute of material fact regarding whether he had a property interest in his position, this Court finds that none are sufficient to raise a genuine dispute of material fact.

Initially, Mr. Armijo cites Village of Columbus Personnel Policy Ordinance No. 297 (Doc. 84, Ex. 6), which he contends provided him a property interest in his position. Section 7.6 of Ordinance No. 297 provides:

> **DISMISSAL:** The Mayor and the Board of Trustees may dismiss regular employees for cause. Regular employees may grieve dismissal through the formal grievance process. At-will employees serve at the discretion of the Mayor and Board of Trustees and may be dismissed with or without cause, without recourse to appeal.

(*Id.*, Ex. 6 at § 7.6). Additionally, pursuant to section 9.5 of Ordinance No. 297, certain employees who are notified of suspension, demotion or dismissal are entitled to a pre-determination hearing, as well as the opportunity to appeal through formal grievance procedures set forth in section 10.2. (*Id.*, Ex. 6 at §§ 9.5 & 10.2). While the cited provisions may vest certain employees with a property interest in their position, this Court finds that Mr. Armijo was an at-will employee pursuant to Ordinance No. 297 and thus was not entitled to the protections afforded by the cited sections.

Section 2.5 of Ordinance No. 297 explicitly defines an "At-will Employee" as "[a]n

---

[2] NMSA 1978, section 3-11-5(A) sets out the procedure for filling appointive offices of a municipality, providing in the relevant part: "At the organizational meeting of the governing body, which shall be scheduled pursuant to Section 3-8-33 NMSA 1978 of the Municipal Election Code, the mayor shall submit, for confirmation by the governing body, the names of persons who shall fill the appointive offices of the municipality and the names of persons who shall be employed by the municipality." Despite Plaintiff's contention to the contrary, the Minutes reflect that this is what happened on March 21, 2006. The Mayor submitted Mr. Armijo for Police Chief to the governing body of the Village of Columbus, who, in turn, voted to confirm the appointment. *See also* NMSA 1978, § 3-11-6(A)(1) ("Subject to the approval of a majority of all members of the governing body, the mayor shall . . . appoint all officers and employees except those holding elective office . . . .").

employee appointed by elected officials, by statute, contract or job description, who serves at the discretion of the elected officials." (*Id.*, Ex. 6 at § 2.5). Section 2.11 defines "Due Process" as "[t]he right granted to full-time or part-time employees, to pre and post hearings for actions of suspension, demotion or dismissal" and further provides: "The right to due process does not apply to appointed employees or to probationary, temporary, casual or term employees." (*Id.*, Ex. 6 at § 2.11). As discussed above, Mr, Armijo was an appointed public official pursuant to NMSA 1978, section 3-12-4(A), as confirmed by March 21, 2006 Minutes, which recognize both his appointment by Mayor Espinoza and the confirmation of his appointment by the Board and document that he was notified at the time of his appointment that his position was an "at-will" position.[3] (Doc. 127, Ex. 1 to Ex. A). Accordingly, pursuant to sections 2.5, 2.11, and 7.6 of Ordinance No. 297, and consistent with New Mexico state law, Mr. Armijo was an at-will employee, who could be dismissed with or without cause, and who was not entitled to due process in connection with his removal.

Mr. Armijo attempts to avoid the conclusion that he was an at-will employee pursuant to

---

[3] While Mr. Armijo asserts that Ordinance No. 297 "nowhere classifies the Police Chief position of the Village as an appointed position" (Doc. 84 at p. 4), there is no requirement that it do so. Notably, Ordinance No. 297 does not define any specific position as an appointed position. (Doc. 84, Ex. 6). Rather than defining an "At-will Employee" by listing specific positions, Ordinance No. 297 defines it as "[a]n employee appointed by elected officials, by statute, contract or job description, who serves at the discretion of the elected officials." (Doc. 84, Ex. 6 at § 2.5).

In an attempt to raise a genuine issue of material fact, Mr. Armijo also cites short excerpts from the depositions of two of the members of the Board of Trustees for the Village of Columbus. In the cited excerpts, Allen Rosenberg testifies that he does not know whether Mr. Armijo was appointed in accordance with any statute and that he was not appointed in accordance with any contract or job description (Doc. 128, Ex. 1 at 67:2-17) and Blas Gutierrez testifies that while he understood that the Mayor could dismiss Mr. Armijo at any time, he did not know whether Mr. Armijo fell into any of those categories that are listed in section 2.5 of Ordinance No. 297 (*Id.*, Ex. 2 at 29:9-30:3). This Court finds that this conclusory deposition testimony from fact witnesses on a legal issue is insufficient to create a genuine issue of material fact.

Ordinance No. 297 by asserting a number of facts that he contends create a dispute as to his treatment under the ordinance.  First, he argues that he received a copy of Ordinance No. 297, was advised that he was subject to and required to abide by its provisions, and contends that no employee or elected official of the Village of Columbus ever explained to Mr. Armijo that Ordinance No. 297 did not apply to him.  (Doc. 84, Ex. 2 at ¶¶ 4-7).  However, as Ordinance No. 297 is a 22-page personnel policy that addresses a whole range of personnel matters and has a number of general provisions (in addition to provisions that are applicable only to subsets of employees), the mere fact that Mr. Armijo was provided a copy of Ordinance No. 297 and was told that he should abide by its provisions (which would include the provisions noted above specifying that appointed officials are not entitled to due process and serve at-will) is not probative of whether Mr. Armijo had a property interest in his position.  (*Id.*, Ex. 6).

Second, Mr. Armijo cites section 3.1 of Ordinance No. 297, which defines a "Full-time Regular Employee" as "[o]ne who has completed a probationary period, who normally is scheduled to work a minimum of 40 hours per week, year round, is not subject to contract or term conditions, and is entitled to full employee benefits."  (*Id.*, Ex. 6 at § 3.1).  Mr. Armijo contends, with no citation to the record, that he "had completed a probationary period and was scheduled to work at a minimum of 40 hours per week." (*Id.* at p. 5).  As Mr. Armijo provides no affidavit, deposition testimony or personnel document to support his assertion that he served a probationary period, his mere citation to section 3.1 fails to raise a genuine issue of material fact.

Third, Mr. Armijo argues that he was treated as a regular employee in a number of ways.  He contends he received his paycheck bi-weekly, noting that section 5.2 of Ordinance No. 297 provides that regular employees shall be paid bi-weekly.  (*Id.*, Ex. 6 at § 5.2).  He contends that he

9

received overtime pay.[4] (*Id.*, Ex. 4 at 101:22-102:15). He contends that he received holiday pay and that under Ordinance No. 297, only full and part time regular employees are entitled to holiday pay. (*Id.*, Ex. 2 at ¶ 9 & Ex. 6 at § 6.3). He contends that the Village of Columbus (which pays the health insurance premiums for full-time regular employees) paid his health insurance premiums. (*Id.*, Ex. 2 at ¶ 8 & Ex. 6 at § 5.7). And he contends that Ordinance No. 297 requires that regular employees receive performance evaluation and that in January 2007, he received a better-than-satisfactory annual performance evaluation. (*Id.*, Ex. 6 at § 8.1 & Ex. 9). None of these facts, however, suffices to raise a genuine issue of material fact. While it is true that Ordinance No. 297 bestows certain benefits on regular employees, it does not follow that the receipt of such benefits transforms an appointed official into a regular employee. *See, e.g., Maez*, 1999 WL 176129, at *3 (rejecting argument by former Village Marshal that his receipt of overtime wages created an issue of material fact as to whether he was an employee rather than an appointed official as he had "provide[d] no authority whatsoever to suggest that an appointed official does not or cannot receive overtime compensation"). By way of example, while Ordinance No. 297 dictates that regular employees receive annual performance evaluations, it does not prohibit the Village of Columbus from

---

[4] While Mr. Armijo's statement of supplemental material facts contains a few alleged supplement facts relating to overtime pay, he has failed to articulate why he believes his receipt of overtime page is probative as to whether he had a property interest in his position. (Doc. 84 at pp. 4-5). This Court notes that whether an employee is entitled to overtime wages pursuant to Ordinance No. 297 appears to depend not on whether the employee is classified as a regular employee versus an appointed official, but instead on how the employee would be classified under federal law pertaining to the Fair Labor Standards Act. (*Id.*, Ex. 6 at §§ 2.12, 2.13 & 2.15). Thus, Mr. Armijo's receipt of overtime wages would appear to have little probative value. Moreover, in *Maez*, the Tenth Circuit explicitly rejected the argument made by the former Village Marshal that his receipt of overtime wages created a genuine issue of material fact as to whether he was an employee versus and appointed official as there was no authority suggesting that an appointed official could not receive overtime compensation. *Maez*, 1999 WL 176129, at *3.

evaluating the performance of at-will employees. Moreover, this Court notes that apart from those provisions of Ordinance No. 297 that specifically address dismissal and the process to which an employee is entitled in connection with discipline or dismissal, Ordinance No. 297 has few provisions that specifically set forth Village of Columbus Policy with respect to full time appointed officials or at-will employees. In light of this, it is perhaps not surprising that the Village of Columbus elected to bestow certain benefits on Mr. Armijo (such a bi-weekly paychecks, paid insurance premiums, and holiday pay) that it provides to its regular full-time employees.

Finally, even if this Court were to assume for the sake of argument that Mr. Armijo had raised a factual issue as to whether he was a regular employee to whom Ordinance No. 297 purported to extend a property right in employment, this Court would still find that Defendants are entitled to summary judgment as to Mr. Armijo's due process claims. As noted above, in *Webb*, the New Mexico Court of Appeals held that the New Mexico statute authorizing municipalities to enact merit system ordinances for municipal employees does not authorize such ordinances to extend to appointed public officers. *Webb*, 117 N.M. at 254-56, 871 P.2d at 18-20. In light of this, even assuming that the Village of Columbus had enacted a policy purporting to extend a property interest in continued employment to the Chief of Police, such policy would be invalid and would not give rise to a property interest.

Apart from Ordinance No. 297, Mr. Armijo argues that Mayor Espinoza promised Mr. Armijo that he would remain in the position of Police Chief for the period that he served as Mayor of the Village of Columbus and told him on several occasions that he could only be terminated if there was a reason for the termination. (Doc. 84, Ex. 2 at ¶ 6 & Ex. 4 at 129:3-7). Initially, this Court notes that the very fact Mayor Espinoza limited his alleged promise to the period that he was serving as Mayor suggests that he recognized that Mr. Armijo was an appointed official,

serving at the discretion of elected officials. His alleged promise is thus distinguishable from one promising indefinite employment. Further, in *Maez*, the Tenth Circuit recognized that while the phrase "for cause" is "a legal term of art with a distinct meaning," the phrase "for a reason" "carries no such legal baggage and thus the Court found that the Village's admission that it had told Mr. Maez he could only be discharged from his employment for a reason was "of little probative value." *Maez*, 1999 WL 176129, at *3. Finally, even assuming Mayor Espinoza had represented more broadly to Plaintiff that he would be employed indefinitely and could be terminated only for cause, Mayor Espinoza's representations would be insufficient to give rise to a property interest as such representations were without statutory authority. *See Silva v. Town of Springer*, 121 N.M. 428, 432, 912 P.2d 304, 308 (N.M. Ct. App. 1996) (representations made to Ms. Baca, the former clerk-treasurer of the Town of Springer, by the town administrator and several members of the town council that the Town's merit system ordinance, protecting employees from arbitrary termination, would be extended to apply to her were without statutory authority and thus not valid acts capable of binding the Town); *see also Trujillo v. Gonzales*, 106 N.M. 620, 621-22, 747 P2d 915, 916-17 (N.M. 1987) (actions of two county commissioners purporting to extend a two-year employment agreement to the plaintiff was without statutory authority and thus not a valid act capable of binding the county).

Finally, Mr. Armijo argues that the position of Police Chief did not become an appointed position until after his termination, citing Village of Columbus Council Meeting Minutes from February 14, 2007 and March 7, 2007, which reflect the passage of an ordinance that apparently confirms that the position of Chief of Police, or its equivalent, is an appointed position pursuant to NMSA 1978, section 3-12-4(A). (Doc. 84, Exs. 8 & 9). The fact that the Village of Columbus adopted an ordinance after Plaintiff was terminated that expressly defined the position he previously

held as an appointed position is not evidence that Plaintiff was not an appointed official. As discussed above, under state law, Mr. Armijo was an appointed official. *See* NMSA 1978, § 3-12-4(A). And his appointment is clearly reflected by the March 21, 2006 Minutes of the Village of Columbus Special Council Meeting. (Doc. 127, Ex. 1 to Ex. A). It was not necessary for the Village of Columbus to have an ordinance in place specifically defining the position in accordance with state law, nor could the Village of Columbus alter Plaintiff's employment status through the adoption of a subsequent ordinance.

Accordingly, as this Court finds that Plaintiff was an appointed official pursuant to New Mexico law and that, as an appointed official, his employment was at-will. Plaintiff thus lacked a property interest in his position and Defendants are entitled to summary judgment as to Plaintiff's procedural and substantive due process claims.

**B.     Qualified Immunity**

The qualified immunity doctrine shields government officials from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In contrast to a typical motion for summary judgment, which places the burden on the moving party, when a defense of qualified immunity is raised, the plaintiff bears the burden of establishing both that (1) "the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right" and (2) "the right violated was clearly established." *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).[5] "The relevant, dispositive inquiry in determining

---

[5] In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the United States Supreme Court held that lower courts must move sequentially through these two prongs in assessing whether qualified immunity applies—thus addressing the "clearly established" prong only if first finding the violation of a constitutional right. In *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009),

whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (*en banc*) (summary judgment is appropriate if the law did not put the official "on notice that his conduct would be clearly unlawful").

As discussed above, this Court finds that Plaintiff has failed to set forth evidence from which a reasonable jury could conclude that he had a property interest in his employment at the time he was terminated. As this Court finds that Plaintiff cannot establish a property interest in his employment and thus cannot establish a violation of his due process rights, it necessarily follows that Plaintiff cannot establish a violation of a right that is clearly established. Thus, Defendants Blas Gutierrez, Roberto Gutierrez, Brian Houltin and Allen Rosenberg are also entitled to summary judgment as to Counts I and X on the basis of qualified immunity. *See, e.g., Silva*, 121 N.M. at 434, 912 P.2d at 310.

## II. Counts XII and XIII: Plaintiff's Breach of Implied Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claims

Plaintiff contends that Ordinance No. 297 created an implied-in-fact employment contract and that the manner in which he was terminated breached that contract. (Doc. 84 at p. 6). As this Court has already determined that neither Ordinance No. 297 nor the alleged representations by

---

however, the Supreme Court held that lower courts have the discretion to decide which of the two prongs to consider first.

14

Mayor Espinoza created a right to continued employment and that, as an appointed official, Mr. Armijo's employment was at-will, the Court finds that Defendants are also entitled to summary judgment as to Plaintiff's claim for breach of implied contract and breach of implied covenant of good faith and fair dealing. For all the reasons set forth in the prior section, this Court holds that Plaintiff cannot establish an implied-in-fact employment contract and the Court therefore grants Defendants summary judgment as to Counts XII and XIII.

### III. Counts XIV and XV: Plaintiff's Prima Facie Tort and Retaliatory Discharge Claims

Plaintiff's complaint includes claims for prima facie tort and retaliatory discharge against the Columbus Defendants. However, pursuant to section 41-4-4(A) of the New Mexico Tort Claims Act ("TCA"), governmental entities and public employees, when acting within the scope of their duties, are immune from liability for any tort except as waived by specific statutory provisions. NMSA 1978 § 41-4-4(A). The claims of prima facie tort and retaliatory discharge are not included in the specified wavier provisions of the TCA. *See* NMSA 1978 §§ 41-4-5 to 41-4-12; *see also Derringer v. State*, 133 N.M. 721, 725, 68 P.3d 961, 965 (N.M. Ct. App. 2003) (governmental entity and public employee immune from liability for claim of prima facie tort). Accordingly, summary judgment is appropriate as to Plaintiff's prima facie tort and retaliatory discharge claims, as they are brought against a governmental entity and public employees acting within the scope of their duties.[6]

### IV. Count XVII: Plaintiff's Battery Claim

Count XVII of Plaintiff's complaint alleges that Defendant Espinoza battered him. As noted above, pursuant to NMSA 1978 section 41-4-4(A), "any public employee while acting within the

---

[6] Notably, Plaintiff does not address either of these claims in his opposition to the instant motion (Docs. 84 & 128), but instead appears to implicitly acknowledge that summary judgment is appropriate to these Counts. (*See* Doc. 84 at p. 20 (requesting that the Columbus Defendants be denied summary judgment "with respect to Counts I, X, XII, XII, and XVII")).

scope of duty [is] granted immunity from liability for any tort" except as waived by the specific statutory provisions. While immunity is waived under the TCA for battery by law-enforcement officers, there is no waiver of immunity for battery by other public employees. NMSA 1978, §§ 41-4-5 to 41-4-12. Plaintiff does not contend that any waiver provision is applicable, but argues that Mayor Espinoza was not acting within the scope of duty when he battered Plaintiff.

"Scope of duty" is defined by NMSA 1978, section 41-4-3(G) as the performance of "any duties that a public employee is requested, required, or authorized to perform by the governmental entity, regardless of the time and place of performance." New Mexico case law establishes that "a public employee may be within the scope of authorized *duty* even if the employee's *acts* are fraudulent, intentionally malicious, or even criminal." *Seeds v. Lucero*, 137 N.M. 589, 592, 113 P.3d 859, 862 (N.M. Ct. App. 2005) (mayor and city attorney's conspiratorial and wrongful intent did not remove their immunity under the TCA where complaint alleged *inter alia* that they conspired to selectively enforce city ordinance and file groundless criminal charges); *see also Celaya v. Hall*, 135 N.M. 115, 121, 85 P.3d 239, 245 (N.M. 2004) ("[T]he TCA clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity."); *Vigil v. State Auditor's Office*, 138 N.M. 63, 68, 116 P.3d 854, 859 (N.M. Ct. App. 2005) ("[A]ssuming that [the defendant] violated state and federal law in conducting the audit, even to the extent of some tortious or criminal activity, if he was performing an act that he was requested, required or authorized to perform, he was acting within his scope of duty and thus covered by the statutory grant of immunity provided by the TCA." (internal quotations omitted)); *Risk Mgmt. Div. v. McBrayer*, 129 N.M. 778, 14 P.3d 43 (N.M. Ct. App. 2000) (holding issue of fact existed as to whether a state university instructor who sexually assaulted, tortured, and attempted to kill one of his students was acting within the scope of his duties and explaining that in adopting

the TCA, "the legislature likely foresaw the possibility that a public employee could abuse the *duties* actually requested, required or authorized by his state employer and thereby commit malicious, even criminal *acts* that were unauthorized, yet incidental to the performance of those duties"). Accordingly, in assessing whether a public employee is immune from liability under the TCA, the New Mexico Court of Appeals has explained that the public employees "wrongful motive is simply irrelevant, as long as there is a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform."[7] *Seeds*, 137 N.M. at 592, 113 P.3d at 862 (internal quotations omitted).

In the case at bar, Plaintiff has alleged that after Defendant Espinoza suspended him from his position, he returned to his office at the police department and began to gather his belongings in a box. When Defendant Espinoza arrived in the Plaintiff's office, he kicked the box from Plaintiff's hand. As the alleged battery occurred at the police station in connection with suspending

---

[7] In his response to Defendants' motion for summary judgment, Plaintiff fails to specifically address immunity under the New Mexico Tort Claims Act. Instead, ignoring the plain language of the statute, Mr. Armijo initially asserts that his complaint does not seek recovery under the TCA. The fact that Mr. Armijo's complaint makes no mention of the TCA, however, has no bearing on whether Defendant Espinoza is immune from liability for battery under the TCA. Plaintiff then argues that the determinative issue is whether Mayor Espinoza was acting within the course and scope of his duties within the meaning of the provisions of the Worker's Compensation Act ("WCA"). Specifically, Plaintiff argues that his claim for WCA benefits was properly denied because the battery was not an "accident" but rather was intentional and did not "arise out of employment" or "in the course of employment" as those terms are defined by the WCA and case law related thereto. The WCA and the TCA, however, are independent and distinct legislative acts, which serve different purposes. The applicable standards under the acts are not interchangeable. The New Mexico Court of Appeals has expressly noted that in adopting the phrase "scope of duty" in the TCA, the New Mexico legislature "created and defined a unique standard to be applied to TCA claims based upon acts of public employees" and "departed from the well-developed standard, the scope of employment." *McBrayer*, 129 N.M. at 781, 14 P.3d at 46. Further, as discussed above, the fact that the battery was intentional (as opposed to an accident) does not remove it from the scope of authorized duty under the TCA.

Plaintiff from his employment as Chief of Police and removing him from the building, this Court finds that Defendant Espinoza was acting within the scope of duty. Accordingly, Defendant Espinoza is entitled to summary judgment as to Count XVII of Plaintiff's complaint as he is immune from liability for his conduct pursuant to the TCA.

**V.      Count XIX:  Plaintiff's POEERA Claim**

Count XIX of Plaintiff's complaint alleges that the Village of Columbus violated the New Mexico Peace Officer's Employer-Employee Relations Act ("POEERA), NMSA 1978, sections 29-14-1, *et seq.*  The New Mexico Court of Appeals, however, has held that there is no private action for violation of this statute. *Sedillo v. N.M. Dep't of Pub. Safety*, 140 N.M. 858, 862, 149 P.3d 955, 959 (N.M. Ct. App. 2006). Accordingly, this Court finds that Plaintiff's POEERA claim fails as a matter of law.[8]

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Village of Columbus, Eddie Espinoza, Tracy Bolduc, Blas Gutierrez, Robert Gutierrez, Brian Houltin and Allen Rosenberg are **GRANTED** summary judgment in their favor as to Counts I, X, XII-XV, XVII and XIX of Plaintiff's complaint.

Dated this 30th day of March, 2011.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

---

[8] Notably, Plaintiff does not address this claim in his opposition to the instant motion (Docs. 84 & 128), but instead appears to implicitly acknowledge that summary judgment is appropriate to this Count. (*See* Doc. 84 at p. 20 (requesting that the Columbus Defendants be denied summary judgment "with respect to Counts I, X, XII, XII, and XVII")).

*Attorney for Plaintiff:*

Michael E. Mozes
5732 Osuna Rd. NE
Albuquerque , NM 87109

*Attorneys for Defendants Village of Columbus, Espinoza, Bolduc, B. Gutierrez, R. Gutierrez, Houltin, Rosenberg, City of Deming Police Department and Sera:*

Gianna M. Mendoza
James P. Sullivan
128 East DeVargas
Santa Fe , NM 87501

*Attorneys for Defendants Perales, Sixth Judicial District Attorney's Office, Flores, Jimenez, Chavez, and Border Operations Task Force:*

Cody R. Rogers
Thomas A. Sandenaw, Jr.
2951Roadrunner Pkwy
Las Cruces , NM 88011

*Attorneys for Defendant D & M Sporting Goods :*

Bryan J. Davis
William Garth Gilchrist
124 Wellesley SE
Albuquerque , NM 87106