**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PAUL ARMIJO,

        Plaintiff,

v.                                                                      No. 08-cv-935 MV/WPL

VILLAGE OF COLUMBUS, et al.,

<u>**MEMORANDUM OPINION AND ORDER**</u>

    **THIS MATTER** comes before the Court on Defendants Perales, Flores, Jimenez, Chavez and the Border Operations Task Force's Revised Motion for Summary Judgment on Plaintiff's Fourteenth Amendment and Retaliatory Prosecution Claims (Doc. 137), Revised Motion for Summary Judgment on Plaintiff's Claims of Conspiracy, Malicious Abuse of Process, and Conversion (Doc. 138), and Revised Motion for Summary Judgment on Plaintiff's Claims of Unlawful Search and Seizure, Unlawful Arrest, and False Imprisonment (Doc. 139). By these motions, Defendants Perales, Flores, Jimenez, Chavez and the Border Operations Task Force (collectively, the "BOTF Defendants") seek summary judgment as to Counts II, III, IV, V, VI, VII, VIII, XVI, XXI, and XXIV of Plaintiff's complaint. The present three motions for summary judgment arise out of an earlier summary judgment motion brought by the BOTF Defendants (Doc. 85), which the Court denied without prejudice on the basis that it failed to indicate which of the defendants were the arresting officers. (Doc. 126). While Plaintiff filed a response to the BOTF Defendants' original summary judgment motion (Doc. 94), he did not file a new response to any of the present motions. Instead, Plaintiff has represented that his earlier response "addresses fully all the matters raised" through the present motions. (Doc. 152). Accordingly, the Court will construe Plaintiff's earlier response (Doc. 94) as his opposition to the present three motions and will also

consider the BOTF Defendants' reply thereto. (Doc. 101). The Court, having reviewed the motions, the memoranda and exhibits submitted by the parties, relevant authorities, and being otherwise fully informed, concludes that the present motions should be **GRANTED in part** and **DENIED in part** as set forth below.

## FACTUAL BACKGROUND

This case arises, in part, out of the investigation and arrest of, and the prosecution of criminal charges against, Plaintiff Paul Armijo, former police chief of the Village of Columbus.

Defendants Mirabel Jimenez, Arnold Chavez, Armando Perales and Adrian Flores were at all times material to Plaintiff's complaint employed by the Sixth Judicial District Attorney's Office as criminal investigators. Defendants Flores and Perales were also attached full-time to the Border Operations Task Force ("BOTF"), a federally-funded task force made up of local law enforcement agencies and Immigrations and Customs Enforcement.

Sometime in early 2007, Defendant Chavez received multiple allegations of Plaintiff's involvement in police corruption issues, including inventory problems with evidence, improper disposal of seized vehicles, mishandling of money, and inventory problems with Village of Columbus Police Department property. He assigned Defendants Jimenez and Perales to investigate the allegations regarding Plaintiff.[1]

The parties dispute whether the investigation into Plaintiff's conduct commenced prior to an alleged incident between the Mayor of the Village of Columbus, Eddie Espinoza, and Plaintiff, which

---

[1] The facts in this paragraph and the proceeding paragraph, which first appear as enumerated material facts in the in the BOTF Defendants' original summary judgment motion (Doc. 85 at p. 3 at ¶¶ 1-4) and are repeated in the revised motions (*see, e.g.,* Doc. 137 at p. 3 at ¶¶ 1-4), are not disputed by Plaintiff. (Doc. 94 at pp. 2-8 (disputing only certain material facts)). Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), these facts are deemed admitted for purposes of the present motions.

resulted in Plaintiff reporting to state police that Mayor Espinoza had battered him and, assuming the investigation did commence after Plaintiff reported the battery, whether the BOTF Defendants were aware of Plaintiff's report at the time they commenced the investigation of Plaintiff.  The battery is alleged to have taken place on January 24, 2007 and Plaintiff allegedly met with state police to report the incident the following day.  (Doc. 1 at ¶¶ 28-36).

In support of their summary judgment motions, the BOTF Defendants submit deposition testimony from Defendant Chavez in which he indicates that he believes that the investigation into Plaintiff's conduct commenced prior to January 25, 2007—the date Plaintiff reported the battery by Mayor Espinoza.  (Doc. 101, Ex. A at 28:6-29:25 & 31:1-7; Doc. 137, Ex. A at 30:1-25).  The BOTF Defendants also submit deposition testimony from Mr. Armijo indicating that at the time of his deposition, he was unaware of facts that would support his contention that the BOTF Defendants had knowledge of the battery report prior to the time they commenced their investigation and that Mr. Armijo could not say that the BOTF Defendants retaliated against him for filing a report with state police.  (Doc. 137, Ex. C at 178:3-180:20 & 224:9-16).

In opposing the summary judgment motions, however, Plaintiff notes that Mr. Chavez's deposition testimony about when the investigation began "is equivocal at best," as Mr. Chavez testified that he "'believe[d]'" the investigation began prior to the alleged battery and report, but "'that's something that could be verified by the report . . . .'"  (Doc. 94 at p. 2 (quoting Doc. 137, Ex. A at 31:1-7)).  Plaintiff also submits deposition testimony from Mayor Espinoza, who had reported Plaintiff's alleged corruption to Mr. Chavez, in which Mayor Espinoza indicates that he telephoned Mr. Chavez regarding the allegations against Mr. Armijo after he placed Mr. Armijo on administrative leave on January 24, 2007 (the day the alleged battery took place).  (Doc. 94, Ex. 1 at 45:15-46:9).  Mayor Espinoza, however, also testified that he never spoke of the alleged battery

3

to the District Attorney's Office or anyone from BOTF.  (Doc. 101, Ex. G at 38:24-39:7).  Plaintiff additionally submits deposition testimony from Defendant Perales indicating that he believes the investigation began on January 25 or 26, 2007.  (Doc. 94, Ex. 2 at 22:10-13).  Further, in affidavits submitted in connection with search warrants, both Defendant Flores and Defendant Perales aver that the investigation began on January 26, 2007.  (Doc. 137, Exs. 3-4 to Ex. C).  Finally, Plaintiff submits deposition testimony from Defendant Perales indicating that during the course of the investigation and before the search warrants were executed, Defendant Perales discovered that Plaintiff had reported a battery by Mayor Espinoza to state police.  (Doc. 94, Ex. 2 at 58:15-25).

It is undisputed that as part of the investigation of Plaintiff, Defendants Jimenez and Perales interviewed Tracy Bolduc and Ernie Sera, both of whom were then officers with the Village of Columbus Police Department.  (Doc. 137, Ex. D at 38:12-15; Doc. 137, Ex. E at 47:7-16).  The BOTF Defendants submit deposition testimony from both Officers Bolduc and Sera (as well as a written statement from Officer Bolduc) regarding what they perceived as Plaintiff's involvement in a number of potential improprieties, including poor evidence handling procedures resulting in missing evidence including narcotics, improprieties with regard to the use and disposal of seized vehicles, possible improper handling of Village of Columbus funds, and improprieties regarding the purchase of firearms.  (Doc. 137, Ex. D at 34:10-36:18, 43:25-44:4 & 55:10-56:14; Doc. 137, Ex. 1 to Ex. D; Doc. 137, Ex. E at 30:11-34:6, 38:4-8, 42:18-43:5 & 52:3-13; *see also* Doc. 137, Ex. C at 185:2-186:6).  While this evidence identifies a number of perceived improprieties, it is not clear from the evidence what Officers Bolduc and Sera told Defendants Jimenez and Perales regarding the alleged improprieties.

Based on their investigation, in late January 2007, the BOTF Defendants prepared applications for search warrants for the homes of Plaintiff and his father-in-law.  (Doc. 137, Exs. 3-4

4

to Ex. C).  According to the BOTF Defendants, Defendants Perales and Jimenez prepared the applications for the search warrants and Defendant Flores prepared the supporting affidavits for the search warrants.  (Doc. 137 at pp. 4-5 at ¶ 12).  Defendant Flores signed the affidavit for the search warrant for Plaintiff's home and Defendant Perales signed the affidavit for the search warrant for Plaintiff's father-in-law's home.  (Doc. 137, Exs. 3-4 to Ex. C).  The warrant applications and supporting affidavits were submitted to the Sixth Judicial District Court in Deming, New Mexico and approved by Judge Gary Jeffreys on January 30, 2007.  (*Id.*).  The search warrants were executed by Defendants Perales, Flores, Jimenez, and Chavez, along with other law enforcement officers, on January 30, 2007.  (Doc. 137, Ex. A at 16:2-6 & 38:15-20; Doc. 137, Exs. 3-4 to Ex. C; Doc. 137, Ex. F at 81:19-21; Doc. 137, Ex. G at 30:22-24)

At the same time the BOTF Defendants applied for the search warrants, they also applied for and received an arrest warrant for Plaintiff's arrest on charges of two counts of larceny of a firearm or, in the alternative, two counts of embezzlement.  (Doc. 137, Exs. 9-10 to Ex. F).  The arrest warrant was obtained by Defendant Perales and the affidavit in support of the arrest warrant was prepared and filed by Defendant Jimenez.  (Doc. 137 at p. 5 at ¶ 15; Doc. 137, Exs. 9-10 to Ex. F; Doc. 137, Ex. F at 94:10-18).  On January 30, 2007, the arrest warrant was executed by Defendant Perales in the presence of other officers.  (Doc. 137 at p. 5 at ¶ 15; Doc. 137, Ex. 10 to Ex. F; Doc. 137, Ex. F at 94:24-95:2).

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281,

1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

As to certain counts, the individual BOTF Defendants raise the affirmative defense of qualified immunity.  The qualified immunity doctrine shields government officials from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In contrast to a typical motion for summary judgment, which places the burden on the moving party, when a defense of qualified immunity is raised, the plaintiff bears the burden of establishing both that (1) "the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right" and (2) "the right violated was clearly established."  *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).[2]  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (*en banc*) (summary judgment is appropriate "if the law did not put the officer on notice that his conduct would be clearly unlawful").

---

[2] In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the United States Supreme Court held that lower courts must move sequentially through these two prongs in assessing whether qualified immunity applies—thus addressing the "clearly established" prong only if first finding a violation of a constitutional right.  In *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), however, the Supreme Court held that lower courts have the discretion to decide which of the two prongs to consider first.

I.      **Counts II, III, VI, and VII:   Plaintiff's Unlawful Search and Seizure, False Imprisonment, and Unlawful Arrest Claims**

Counts II, III, VI, and VII of Plaintiff's complaint are brought pursuant to 42 U.S.C. §1983. Count II alleges that Plaintiff was subject to an unreasonable search and seizure in that the search warrants issued in connection with the investigation of Plaintiff were overbroad, did not sufficiently describe the things to be seized, and were not accompanied by affidavits sufficient to support findings of probable cause.  Counts III and VI allege that Plaintiff was wrongfully arrested as no probable cause existed to support the arrest warrant issued and Count VII alleges that following his arrest, Plaintiff was falsely imprisoned for approximately one day.  The BOTF Defendants seek summary judgment on these four counts on the basis that the BOTF Defendants' actions in obtaining and executing the search and arrest warrants were supported by adequate probable cause and on the basis that the individual BOTF Defendants are entitled to qualified immunity.

A.      **The Search Warrant**

As noted above, Plaintiff alleges that the search warrants[3] issued were overbroad and did not sufficiently describe the things to be seized and that the affidavits submitted in support of the search

---

[3] Two search warrants were issued—one for Plaintiff's residence and one for the residence of Plaintiff's father-in-law.  While the affidavits submitted in support of the two warrants are signed by different officers (one by Defendant Flores and one by Defendant Perales), the body of the affidavits are virtually identical with the exception of one additional paragraph that is contained in the warrant relating to Plaintiff's residence, which paragraph addresses an error that occurred as to Plaintiff's address.  (Doc. 137, Exs. 3-4 to Ex. C).  The scope of the items covered by the two warrants, however, differs in certain respects.  (*Id.*).  As, for the reasons set forth in this section, the Court finds that the warrant for the search of Plaintiff's residence was overbroad and lacked particularity and that the BOTF Defendants are not entitled to qualified immunity as to this warrant, the Court will not address the constitutionality of the second search warrant covering Plaintiff's father-in-law's residence.  At this stage, the Court expresses no opinion as to whether Plaintiff can establish an expectation of privacy in his father-in-law residence.

warrants did not support a finding of probable cause.  (Doc. 1 at ¶¶ 91 & 93).  The Fourth Amendment of the United States Constitution guarantees the right of citizens to be secure from unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  This warrant requirement serves both the purpose of eliminating searches that are not based on probable cause, as well as ensuring those searches deemed necessary are as limited as possible.  *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009).  Accordingly, the Tenth Circuit has recognized that "[i]t is not enough that the warrant makes reference to a particular offense; the warrant must 'ensure[ ] that [the] search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'"  *Id.* at 636 (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)).  In reviewing Plaintiff's claims, the determination of probable cause made by the judge who issued the warrant is entitled to great deference.  *Poolaw*, 565 F.3d at 728-29.

Here, the introductory paragraph of the body of the affidavit submitted in support of the search warrant for Mr. Armijo's residence indicates that BOTF agents, along with Sixth Judicial District Attorney's Office investigators, "have been investigating allegations of larceny of Village of Columbus Police Department property and allegations of Officer Misconduct."  (Doc. 137, Ex. 3 to Ex. C).  The following paragraphs, however, detail only evidence of Mr. Armijo's alleged conversion of two Springfield Armory XD .40 cal. pistols allegedly belonging to the Village of Columbus Police Department.  Specifically, the affidavit avers:

> 2.   During the [i]nvestigation, investigators uncovered evidence that Columbus Police Chief Paul ARMIJO did in fact take two Springfield Armory XD .40 cal. pistols belonging to the Columbus Police Department and converted them for his personal use with out [sic] permission from the Village of Columbus.

8

3.     On November 21, 2006, Columbus Police Department Chief Paul ARMIJO received six (6) Springfield Armory XD .40 cal. semi-automatic pistols from Shaun Reynolds owner of D & M Sporting Goods, located in Deming, New Mexico. The Village of Columbus issued Chief ARMIJO a purchase order for four (4) Springfield Armory XD .40 cal. semi-automatic pistols. The purchase order number HS-06-001 was for the amount of $2360.00.

4.      After investigators checked D & M Sporting Goods records agents noticed that the bid sheet submitted to the Village of Columbus from D & M Sporting Goods indicated that the Village of Columbus was sold six (6) firearms instead of four (4) in the total amount of $3,144.00. A letter dated October 31, 2006, signed by Chief ARMIJO to D & M Sporting Goods stated that the six (6) firearms would be used for the Village of Columbus.

5.     An inventory of firearms at the Columbus Police Department revealed only four (4) firearms. Investigators spoke with Columbus Police Officer Tracy Bolduc about the two missing firearms. Officer Bolduc stated that Chief ARMIJO had purchased one of the firearms for personal use and the other to give to his father-in-law. Investigators also received a taped statement from Columbus Police Officer Willie Kerin that Chief ARMIJO did get one of the firearms for his father-in-law, and one for his personal use. The serial numbers for both weapons are US267504 and US267505.

(*Id.*). The body of the affidavit does not identify or discuss any other property allegedly stolen by Mr. Armijo, does not mention alleged misappropriation of funds, and does not mention narcotics or controlled substances. (*Id.*).

Despite the limited scope of the facts set forth in the affidavit to establish grounds for the issuance of the search warrant, the warrant itself authorizes a broad search that includes: "[b]ooks, records and information, computerized records, receipts, notes, ledgers and other documents relating to transporting, ordering, purchasing, and/or distributing controlled substances," "[f]inancial documents, including but not limited to, credit card statements, tax returns, safe-deposit records, safe-deposit keys, bank records, bank statements, money orders, Western Union receipts, checking account records[,] cashiers checks, passbooks and other items evidencing the obtainment, concealment and/or expenditure of money," "[p]hotographs and/or video tapes including but not

limited to photographs and/or video tapes of co-conspirators, weapons, assets and/or controlled substances and/or narcotics," "[a]ny and all firearms, which may be currently reported[ ] stolen or altered in any manner . . . which would constitute a crime" and "[a]ny and all parts[,] pieces, barrel ends, or components of any firearm."  (*Id.*).

The Court concludes that, on its face, the warrant is overbroad.  While the BOTF Defendants argue that the scope of the warrant is justified as Plaintiff was suspected of larceny of Village of Columbus property, including receipt books, money, narcotics, and firearms, and further rely on Defendant Flores's experience in investigating narcotics cases and case law relating to the particularity required for warrants in narcotics-related cases, the BOTF Defendants ignore the fact that the body of the affidavit makes no reference whatsoever to narcotics and does not indicate that any narcotics were missing from Village of Columbus Police Department evidence.  Nor does the body of the affidavit mention missing receipt books or funds.  *See Poolaw*, 565 F.3d at 729 & n.7 (in passing on the validity of a warrant, a court may not rely on evidence outside the affidavit and unknown to the issuing judge to establish probable cause).  The Court thus rejects the BOTF Defendants' argument that they are entitled to summary judgment on the basis that the warrant was constitutionally sound.

The Court's inquiry, however, does not end there as the individual BOTF Defendants have also argued that they are entitled to qualified immunity, citing the protection of the *Leon* good-faith doctrine.  *See United States v. Leon*, 468 U.S. 897 (1984).  Accordingly, Plaintiff must establish that the right violated was clearly established.  The pertinent inquiry is whether a reasonably well-trained officer in the BOTF Defendants' position would have know that the search was illegal despite the judge's authorization.  *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (citing *Leon* and recognizing that the shield of qualified immunity is lost only where a warrant application is so lacking in indicia

of probable cause that official belief in its existence is unreasonable); *see also Poolaw*, 565 F.3d at 733-35.

The Court finds that Plaintiff has met his burden of establishing the right was clearly established. In this case, the search warrant was so facially overbroad and the affidavit so lacking in probable cause to support the broad search that the warrant purported to authorize that it could not be reasonably relied upon by the BOTF Defendants under clearly established law. As noted above, the warrant purported to authorize not only a search for the allegedly misappropriated firearms, but also a search for narcotics and a wide array of financial documents despite no mention whatsoever of narcotics or the misappropriation of funds in the body of the supporting affidavit. As it was clearly established law at the time of the search that the particularity requirement of the Fourth Amendment requires a search be confined to the specific crime for which probable cause is established, the Court will deny the BOTF Defendants' motion for summary judgment on the basis of qualified immunity. *Voss*, 774 F.2d at 404-05 (recognizing "[t]he particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause" and finding warrants overbroad where "[t]he government affidavit supporting the warrants at issue alleged a scheme of tax fraud" but "[t]he bulk of the warrant was not restricted to evidence relating to tax fraud"); *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988) (finding search warrant overbroad where the scope of the warrant was not limited to the specific areas and things for which there was probable cause); *see also Cassady*, 567 F.3d at 635-36, 643-44 (finding warrant that did not confine the scope of the search to evidence relating to the particular crime for which probable cause existed was overbroad and noting that in light of the court's conclusion the warrant was impermissibly overbroad, "the clearly established prong is easily

11

satisfied" as the particularity requirement is set forth in the text of the Constitution).[4]

**B.      The Arrest Warrant**

The affidavit submitted by Maribel Jimenez to establish probable cause for the issuance of

a warrant to arrest Plaintiff on two counts of larceny of a firearm, or in the alternative two counts of

embezzlement, mirrors a portion of the language found in body of the search warrant affidavit.

Specifically, the affidavit states:

> On November 21, 2006, Columbus Police Department Chief Paul Armijo received six
> (6) Springfield Armory XD .40 cal. semi-automatic pistols from Shaun Reynolds
> owner of D & M Sporting Goods, located in Deming, New Mexico.  The Village of
> Columbus issued Chief Armijo a purchase order for four (4) Springfield Armory XD
> .40 cal. semi-automatic pistols.  The purchase order number HS-06-001 was for the
> amount of $2360.00.
>
> After investigators checked D & M Sporting Goods records agents noticed that the
> bid sheet submitted to the Village of Columbus from D & M Sporting Goods
> indicated that the Village of Columbus was sold six (6) firearms instead of four (4)
> in the total amount of $3,144.00.  A letter dated October 31, 2006, signed by Chief
> Armijo to D & M Sporting Goods stated that the six (6) firearms would be used for
> the Village of Columbus.
>
> An inventory of firearms at the Columbus Police Department revealed only four (4)
> firearms.  Investigators spoke with Columbus Police Officer Tracy Bolduc about the
> two missing firearms.  Officer Bolduc stated that Chief Armijo had purchased one [of]
> the firearms for personal use and one to give to his father-in-law.  The serial numbers
> for both weapons are US267504 and US267505.  Assistant District Attorney Darren
> Kugler approved state prosecution.

(Doc. 137, Ex. 9 to Ex. F).  The arrest warrant, like the search warrants, was signed by Judge Gary

Jeffreys.  (Doc. 137, Exs. 9-10 to Ex. F).

"Probable cause for an arrest warrant is established by demonstrating a substantial probability

that a crime has been committed and that a specific individual committed the crime." *Wolford v.*

_____

[4]  As the Court finds that summary judgment on qualified immunity is inappropriate on
this basis, it does not consider Plaintiff's arguments that the BOTF Defendants intentionally or
reckless withheld relevant information from the judge who issued the warrant.

*Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

Here, Defendant Jimenez's affidavit indicates that a bid sheet was submitted to the Village of Columbus from D & M Sporting Goods indicating that the Village of Columbus was sold six firearms for a total amount of $3,144.00; that an October 31, 2006 letter, signed by Chief Armijo and addressed to D & M Sporting Goods, states that the six firearms will be used by the Village of Columbus; that on November 21, 2006, Chief Armijo received six firearms from D & M Sporting Goods; and that an inventory of firearms at the Village of Columbus Police Department revealed only four of the firearms. These facts would appear to suggest the existence of probable cause. However, in determining whether probable cause to arrest existed, the Court looks not only to the facts supporting probable cause, but also to those that militate against it. *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004). In this case, Defendant Jimenez's affidavit also indicates that the Village of Columbus issued Chief Armijo a purchase order for only four firearms for the amount of $2,360.00 and that when investigators spoke with Columbus Police Officer Tracy Bolduc about the two missing firearms, Officer Bolduc stated that Chief Armijo had purchased one of them for his personal use and the other to give to his father-in-law.

While the Court recognizes that an issuing judge's determination of probable cause is entitled to great deference, it finds that the facts contained in the affidavit are insufficient to establish probable cause for the arrest of Plaintiff. The affidavit specifically indicates that the Village of Columbus purchase order was for four firearms and the affidavit contains no evidence that the Village of Columbus paid for the remaining two firearms. To the contrary, the affidavit indicates that Officer Bolduc reported that Plaintiff had purchased the remaining two firearms. As the only evidence contained in the affidavit regarding payment for the two firearms at issue indicates that Plaintiff, not the Village of Columbus, paid for the firearms, the affidavit does not establish probable

cause for Plaintiff's arrest for either larceny of the two firearms or, alternatively, for embezzlement of the firearms.

The Court therefore turns to the issue of whether the individual BOTF Defendants are entitled to summary judgment on the basis of qualified immunity and concludes that they are not. As noted above, probable cause for an arrest warrant is established by demonstrating that there is a substantial probability that a crime has been committed by a specific individual. *Wolford*, 78 F.3d at 489. Further, an officer loses the shield of qualified immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344-45. This presents such a case. As noted above, Defendant Jimenez's affidavit includes evidence indicating that the Village of Columbus paid for four firearms and that Plaintiff paid for the two allegedly missing firearms. As the evidence contained in the affidavit regarding payment suggests that Plaintiff, not the Village of Columbus, paid for the firearms, it cannot reasonably be relied on to support the arrest of Plaintiff on charges of larceny or embezzlement of the two firearms. Accordingly, the Court will deny the BOTF Defendants' request for summary judgment as to Counts III, VI, and VII.[5]

## II.   Count IV: Plaintiff's Claim for Retaliatory Prosecution

Count IV of Plaintiff's complaint alleges a claim against the BOTF Defendants for retaliatory prosecution under § 1983. Specifically, Plaintiff contends that the BOTF Defendants' actions in

---

[5] While there is evidence that all the BOTF Defendants were engaged in either the preparation or execution of the search warrant, it is not clear that all the officers were similarly involved with respect to preparation and execution of the arrest warrant. In particular, it is unclear from the facts provided whether Defendant Flores had any involvement in Plaintiff's arrest and subsequent imprisonment. However, as the BOTF Defendants have not specifically argued that any of the individual BOTF Defendants are entitled to summary judgment based on that individual's particular role (or lack thereof) in the arrest and confinement of Plaintiff, the Court does not address this issue in the present Order.

investigating and prosecuting the charges against him were undertaken in retaliation for Mr. Armijo having exercised his First Amendment rights in reporting the misconduct of Mayor Espinoza to state police.

In the First Amendment context, "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation omitted). In order to establish a claim for retaliatory prosecution based on speech protected by the First Amendment, Plaintiff must establish: (1) that he was engaged in constitutionally protected activity; (2) that the BOTF Defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the BOTF Defendants' actions were substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. *Id.*

While the BOTF Defendants assert in passing that Plaintiff has failed to establish any of these elements, they offer no argument regarding the first element—that Plaintiff's reporting of the alleged battery constituted constitutionally protected speech—but instead assume *arguendo* that this element has been established. Accordingly, the Court examines only the latter two elements.

The Court finds that there are material issues of fact as to the second element—whether the BOTF Defendants' actions in obtaining search and arrest warrants and initiating criminal charges caused Mr. Armijo to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity. Though the BOTF Defendants assert that Plaintiff was not deterred from making allegations and reporting misconduct, as evidenced by the instant suit, this assertion does not foreclose that the alleged conduct at issue here—initiating an investigation, obtaining and executing warrants, and initiating criminal charges—could be found by reasonable

15

jurors to be sufficient to chill a person of ordinary firmness from continuing to report alleged misconduct by public officials to the police.  Accordingly, the Court finds that there are genuine issues of material fact as to this element that preclude summary judgment.

The Court likewise finds that there are genuine issue of material fact as to the third element—whether the BOTF Defendants' actions were substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct.  While there is evidence that supports the BOTF Defendants' contention that the investigation of Plaintiff commenced prior to January 25, 2007 (the date Plaintiff reported the alleged battery by Mayor Espinoza), or at least prior to the time the BOTF Defendants became aware of the report, there is also evidence from which one could conclude that the investigation began almost immediately *after* the battery was reported.  As noted above, there is deposition testimony from Defendant Perales that indicates that the investigation began on January 25 or 26, 2007.  (Doc. 94, Ex. 2 at 22:10-13).  Additionally, the affidavits submitted in support of the search warrants aver that the investigation began on January 26, 2007.  (Doc. 137, Exs. 3-4 to Ex. C).  Given the extremely close temporal proximity between the time the alleged battery was reported and the time the investigation was potentially initiated (and the fact that Mayor Espinoza was in contact with the BOTF, even if he denies any discussion of the battery), one could infer a retaliatory motive.  Finally, there is deposition testimony from Defendant Perales indicating that he was aware that Plaintiff had reported the battery before the search warrants were executed on January 30, 2007.  (Doc. 94, Ex. 2 at 58:15-25).  Thus, even assuming that certain initial investigatory steps were taken prior to the BOTF Defendants becoming aware of the reported battery, this would not foreclose that subsequent actions by the BOTF Defendants were substantially motivated by Plaintiff's report rather than the BOTF Defendants' initial investigatory findings.  In light of these factual disputes, the Court will deny the BOTF Defendants' request for summary judgment as to

16

Count IV.

### III.    Counts V and XXI:  Plaintiff's Conspiracy Claims

In three conclusory paragraphs, the BOTF Defendants argue that Plaintiff's conspiracy claims—Count V (which alleges conspiracy pursuant to § 1983) and Count XXI (which alleges civil conspiracy)—should be dismissed as (1) Plaintiff's complaint fails to allege specific facts showing agreement and concerted action between the BOTF Defendants and any co-conspirators; (2) there is no underlying constitutional violation as the BOTF Defendants' actions were supported by probable cause; and (3) Plaintiff has not demonstrated the requisite elements of a civil conspiracy under New Mexico law.

This Court previously found in a Memorandum Opinion and Order addressing Defendant D & M Sporting Goods, LLC's Motion to Dismiss Counts V and XXI of the Complaint that the complaint, which alleges *inter alia* that D & M Sporting Goods, LLC (D & M) "fabricated an invoice on January 26, 2007 at the request of law enforcement authorities to support the bogus charges brought against Armijo–with the invoice showing all six pistols as being purchased by the Village of Columbus" (Doc. 1 at ¶ 44), was sufficient to state a conspiracy claim as to D & M.  (Doc. 82). As the BOTF Defendants were the law enforcement officers conducting the investigation, the reasoning of the Court's previous order and the conclusion that Plaintiff has sufficiently alleged a conspiracy would appear to extend to the BOTF Defendants.  Likewise, as discussed above in Section I of this Order, the Court has already rejected the BOTF Defendants' argument that they are entitled to summary judgment on the basis that the search of Plaintiff's residence and Plaintiff's arrest were supported by probable cause.  The real issue would appear to be whether there is evidence

sufficient to support the allegations of conspiracy.[6]  This issue, however, has not been adequately briefed.  The BOTF Defendants devote only one short paragraph to their assertion that a civil conspiracy claim has not been demonstrated and  Plaintiff does not address the conspiracy claims in his opposition.  Instead, Plaintiff appears to implicitly acknowledge that summary judgment is appropriate with respect to the conspiracy counts, as he requests that the Court deny the BOTF Defendants summary judgment as to certain counts, but does not include either Count V or XXI among these counts.  (Doc. 94 at p. 32 (requesting that the Court "deny the BOTF Defendants' motion for summary judgment as to Counts II, III, IV, VI, VII, and XVI of the Complaint")).  In light of the inadequate briefing and the apparent agreement of the parties, the Court declines to opine on the adequacy of the evidence to support Plaintiff's conspiracy claims and will deny the BOTF's request for summary judgment as to Counts V and XXI without prejudice.  To the extent the parties are in agreement that these counts should be dismissed, the parties should file a stipulation dismissing these counts pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

## IV.      Count VIII:   Plaintiff's Due Process Claim Based on a Liberty Interest in His Reputation

Count VIII of Plaintiff's Complaint alleges that at least certain individual BOTF Defendants deprived Plaintiff of his liberty interest in his reputation and good standing in the community by accusing him of larceny and embezzlement.  To establish a deprivation of his liberty interest in his reputation and good standing, Plaintiff must show that statements made by the BOTF Defendants

---

[6]  Notably, Plaintiff voluntarily dismissed Count XXI as to D & M (Doc. 83) and, on February 7, 2011, the Court entered a Memorandum Opinion and Order granting D & M summary judgment as to Count V, as it found, among other things, that there was no evidence that D & M acted in concert with law enforcement officer or conspired with law enforcement. (Doc. 157).

(1) impugned his good name, reputation, honor or integrity; (2) were false; (3) occurred in the course of terminating him or foreclosed other employment opportunities; and (4) were published. *Sandoval v. City of Boulder*, 388 F.3d 1312, 1329 (10th Cir. 2004). The BOTF Defendants argue that Plaintiff's complaint fails to identify "what statements, if any, Plaintiff is alleging were made by BOTF Defendants other than those contained within the Criminal Complaint and applications for warrants filed by BOTF Defendants, and the statements by Perales to the Law Enforcement Academy" and that Plaintiff has therefore failed to establish that statements were made that impugned Plaintiff's good name, reputation, honor or integrity and that such statements were published. (Doc. 137 at p. 7). The BOTF Defendants further argue that as Plaintiff was employed by the Village of Columbus and not the BOTF (who played no part in the decision to terminated Plaintiff's employment), Plaintiff cannot established that any alleged statements by the BOTF Defendants occurred in the course of terminating Plaintiff or foreclosed other employment opportunities. *See Spalsbury v. Sisson*, 250 Fed. App'x 238, 248 (10th Cir. 2007) (unpublished) (while criminal charges levied against the plaintiff by certain defendants damaged his reputation and contributed to him being fired, they did not occur in the course of terminating the plaintiff, as plaintiff was not employed by the defendants making the charges).

Plaintiff does not address his due process claim in his opposition to the summary judgment motions, but instead appears to implicitly acknowledge that summary judgment is appropriate as to Count VIII. (*See* Doc. 94 at p. 32 (requesting that the Court deny the BOTF Defendants' summary judgment motions as to certain listed counts)). As Plaintiff has failed to even identify any specific statement in opposition to the summary judgment motion that he contends the BOTF Defendants made that impugned his good name, reputation, honor or integrity, was false, and was published, much less to offer evidence that such statement was made in the course of terminating him or

19

foreclosed other employment opportunities, the Court will grant the BOTF Defendants summary judgment as to Count VIII.

## V.      Count XVI:  Plaintiff's Malicious Abuse of Process Claim

Count XVI of Plaintiff's complaint alleges a claim for malicious abuse of process.  After reciting the elements of a malicious abuse of process claim, the BOTF Defendants' entire argument as to why they are entitled to summary judgment as to Plaintiff's malicious abuse of process claim consists of a single sentence:  "Plaintiff's state law claim for malicious abuse of process fails as a matter of law where it is clear that [the] BOTF Defendants acted on the basis of constitutionally and legally adequate probable cause throughout their investigation and prosecution of Plaintiff."  (Doc. 138 at p. 8).  The Court finds that this conclusory assertion is insufficient to establish that the BOTF Defendants are entitled to summary judgment as to Plaintiff's malicious abuse of process claim.  The Court will not act as a party's attorney and make the party's arguments for them.  Doing so would not only consume an inordinate amount of time, but would result in the Court abandoning its neutrality and becoming an advocate in the adversarial process.  Moreover, contrary to the BOTF Defendants' conclusory assertion, it is not "clear" that the BOTF Defendants acted on the basis of adequate probable cause throughout their investigation based on the evidence submitted by the BOTF Defendants; as noted above, the Court has already found that the affidavits submitted in support of both the search and arrest warrants failed to establish probable cause.  Accordingly, the Court will deny the BOTF Defendants' request for summary judgment as to Count XVI.

## VI.     Count XXIV:  Plaintiff's Conversion Claim

Finally, Count XXIV of Plaintiff's complaint alleges a state law claim for conversion.  The BOTF Defendants argue that this claim should be dismissed as immunity has not been waived pursuant to the New Mexico Tort Claims Act ("TCA").  Section 41-4-4(A) of the TCA provides that

governmental entities and public employees, when acting within the scope of their duties, are immune

from liability for any tort except as waived by specific statutory provisions.  NMSA 1978,

§ 41-4-4(A).  The BOTF Defendants argue that the TCA does not contain a statutory provision

waiving immunity for a conversion claim.  *See Townsend v. State ex rel. State Hwy Dept.*, 117 N.M.

302, 304, 871 P.2d 958, 960 (N.M. 1994) ("[P]laintiffs claims for trespass and conversion are not

torts for which immunity has been waived by the Act.").  The BOTF Defendants, however, fail to

address the waiver set forth in  § 41-4-12 of the TCA, which provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does
> not apply to liability for personal injury, bodily injury, wrongful death or property
> damage resulting from assault, battery, false imprisonment, false arrest, malicious
> prosecution, abuse of process, libel, slander, defamation of character, violation of
> property rights or deprivation of any rights, privileges or immunities secured by the
> constitution and laws of the United States or New Mexico when caused by law
> enforcement officers while acting within the scope of their duties.

NMSA 1978, § 41-4-12.   As this provision would waive immunity for conversion by law

enforcement officers while acting within the scope of their duties, the Court finds that the BOTF

Defendants have not established that they are entitled to summary judgment as to Count XXIV.[7]

## CONCLUSION

**IT IS THEREFORE ORDERED** that summary judgment is **GRANTED** in favor of

Defendants Armando Perales,  Adrian Flores, Mirabel Jimenez, Arnold Chavez, and Border

Operations Task Force as to Count VIII of Plaintiff's complaint.

---

[7]  The Court notes that Plaintiff does not address this claim in his opposition to the
summary judgment motions (Docs. 94), but instead appears to implicitly acknowledge that
summary judgment is appropriate as to Count XXIV.  (*See* Doc. 94 at p. 32 (requesting that
the Court "deny the BOTF Defendants' motion for summary judgment as to Counts II, III, IV, VI,
VII, and XVI of the Complaint")).  To the extent the parties are in agreement that this claim
should be dismissed, the parties should file a stipulation dismissing Count XXIV pursuant to
Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

**IT IS FURTHER ORDERED** that Defendants Armando Perales,  Adrian Flores, Mirabel Jimenez, Arnold Chavez, and Border Operations Task Force's request for summary judgment as to Counts II, III, IV, V, VI, VII, XVI, XXI, and XXIV of Plaintiff's complaint is **DENIED**.


Dated this 4th  day of May, 2011.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff:*

Michael E. Mozes
5732 Osuna Rd. NE
Albuquerque , NM 87109

*Attorneys for Defendants Village of Columbus, Espinoza, Bolduc, B. Gutierrez, R. Gutierrez, Houltin, Rosenberg, City of Deming Police Department and Sera:*

Gianna M. Mendoza
James P. Sullivan
128 East DeVargas
Santa Fe , NM 87501

*Attorneys for Defendants Perales, Sixth Judicial District Attorney's Office, Flores, Jimenez, Chavez, and Border Operations Task Force:*

Cody R. Rogers
Thomas A. Sandenaw, Jr.
2951Roadrunner Pkwy
Las Cruces , NM 88011

*Attorneys for Defendant D & M Sporting Goods:*

Bryan J. Davis
William Garth Gilchrist
124 Wellesley SE
Albuquerque , NM 87106

22